[Civ. No. 8545. Second Appellate District, Division One.—November 16, 1934.]

FRANK NAKAMOTO et al., Appellants, v. LOUIS TESTINO et al., Respondents.

Fred A. Shaeffer and David F. Hart for Appellants.

Preisker, Goble & Twitchell and Thomas P. Weldon for Respondents.

HOUSER, J.—This appeal is based upon a judgment that was rendered in pursuance of a verdict returned by a jury in an action brought by the plaintiffs against the defendants for the recovery of damages alleged to have ensued to the plaintiffs by reason of the death of one Fusa Nakamoto, who was killed in a collision that occurred between her as a pedestrian and an automobile that was being operated at the time of such collision by defendant Alexander Testino.

Appellants urge several reasons as being sufficient for a reversal of the judgment; each of which being primarily dependent upon a conclusion by this court that the admitted facts incontrovertibly show that in the operation of his automobile at the .time when the accident occurred, defendant Alexander Testino was guilty of negligence that proximately

caused the death of Fusa Nakamoto. On the other hand, the respondents assert that the evidence clearly established the fact that at all times in question, defendant Alexander Testino operated his automobile in a careful and prudent manner; that the jury so found; and that its verdict is conclusive as to that fact; consequently that the foundation for each of the points presented by the appellants being destroyed, such points are of no avail. Moreover, that the special defense to the action that was interposed by the defendants of contributory negligence on the part of Fusa Nakamoto was in the same manner decided by the jury in the affirmative, and that likewise a decision by the jury in that regard, based upon substantial evidence to the effect that such contributory negligence existed on the part of Fusa Nakamoto was not only conclusive as to that ultimate fact, but also rendered immaterial any question as to the assumed (but not conceded) negligence of Alexander Testino. In that connection, in their reply brief appellants admit that "if the deceased was guilty of contributory negligence, the plaintiffs would not be entitled to recover, . . . ██ Thus, for the purpose of this appeal, the preliminary question is narrowed to a determination of whether the evidence adduced on the trial of the action was sufficient to authorize a finding that Fusa Nakamoto was guilty of contributory negligence.

The accident occurred at night on an east-and-west paved highway (and not at any street or road intersection), which Fusa Nakamoto was attempting to cross "at an angle" in a southerly direction. The automobile that was operated by Alexander Testino had its headlights burning; was traveling in an easterly direction; and just before colliding with Fusa Nakamoto, was passed by another automobile, likewise with its headlights burning, that was traveling westerly and was driven by a Mrs. Hulett. In part, Mrs. Hulett testified as follows:

"Q. Where was the woman with reference to the edge of the pavement when you first saw her? A. She was just getting ready to cross the pavement. Q. Which side? A. The north side. Q. When you saw her, what did she do? A. She started to cross the pavement. Q. Have you any idea how far you were away from her when you first saw her? A. No, just as far as my lights shone. I don't know

how far that was. Q. When she started across, how did she move? A. A kind of a little run, half trot and walk. Q. Which way was she going? A. She was going south, on the south side of the pavement. . . . Q. Where was your car when she crossed? A. I did not have to get off the pavement to let her cross. Well, she was about a foot and a half from the middle of the road. . . . Q. Now all that time you had observed her, how did she travel, how did she conduct herself? A. All the time I saw her she was trotting, kind of trotting across the road. Q. Just describe her general actions. A. Her body, as she crossed that road, just as I got up pretty close to her she looked up at my machine. . . . Q. Now, during the time that she was crossing the road, the entire time, what direction did she look? A. She just looked up at my car, that is all I remember. Q. At times she was not looking up at your car, in what direction did she look? A. She was looking straight ahead, I suppose. Q. Just state how she went across the road, and if you can tell how she carried herself as she was crossing the road? A. She was trotting across the road and just as my car got real close to her she looked up. Q. Was that the only time she looked up? A. Yes, sir. Q. At that time where did she look? A. At my car. Did she look in any other direction? A. Not that I know of. I did not see her.''

Mrs. Testino, who was a passenger in the automobile operated by Alexander Testino, in part testified as follows:

''Q. While that woman was running, in which direction was she looking, Mrs. Testino? A. She was crossing right in front of the machine, and she was looking toward the ground. Q. Did she look in any other direction at all as long as you saw her? A. Not that I know of; not that I could see. Q. Did she look toward you at any time? A. She did not. Q. Where was she with reference to the center line of the street when your car struck her? A. She was about 2 feet past the center of the road. She was about 2 feet past the center of the road, right in front of her (?) machine. Q. On which side of the road, which side of the center? A. On the south side.''

And defendant Alexander Testino testified as follows: ''Q. When you first saw the woman, what was she doing? A. She was trotting across from the north to the south side. . . . Q. In which direction was she trotting? A. Going on an

angle, more like an angle than straight across. . . . Q. How far ahead of you was she about, when you first saw her? A. Around 15 feet. . . . Q. When you hit her, which side of the highway were you on? A. When I hit the woman? Q. Yes. A. I was on my side of the highway, south. Q. Which side of the highway was she on when you hit her? A. She was on my side. . . . Q. Describe just exactly how the woman was going when she was going across the street. A. Her head was down on the paved part and she was not even looking at my car at all. She never even turned her head once up to my car at all. She just continued on, going across."

It thus appears that, notwithstanding presumptions or other evidence that may have been submitted for the consideration of the jury, that body was justified in determining the facts to be that in the night-time Fusa Nakamoto started to cross a highway at a time when an automobile driven by Mrs. Hulett was approaching Fusa Nakamoto from the east, and at the same time the automobile operated by defendant Alexander Testino was approaching Fusa Nakamoto from the west; that before attempting to cross said highway Fusa Nakamoto failed to look in either direction until the car driven by Mrs. Hulett was very close to her; and that neither thereafter, nor at all, did she look in the direction from which the automobile driven by Alexander Testino was approaching.

In such circumstances, a finding by the jury to the effect that Fusa Nakamoto was guilty of contributory negligence is sustained in principle by so many authorities in this state that it is deemed unnecessary to cite them.

The judgment is affirmed.

Conrey, P. J., and York, J., concurred.