[Civ. No. 5810. Third Appellate District.—October 5, 1937.]

TERESA BUCHIGNONI et al., Respondents, v. H. W. DE-HAVEN, Appellant.

Honey & Mayall for Appellant.

Gumpert & Mazzera for Respondents.

PULLEN, P. J.—This appeal is from a judgment in favor of plaintiffs for the death of Paul Buchignoni, a pedestrian, who met his death when struck by an automobile being driven

by the defendant DeHaven on the evening of February 14, 1936.

The accident happened on the main highway which runs in a general easterly and westerly direction between the cities of Tracy and Manteca in San Joaquin County. Here the highway was of concrete twenty feet in width with an additional macadam shoulder on each side approximately two feet wide.

On the evening of the accident DeHaven was driving his Chevrolet sedan toward Manteca and had with him as his guests two other men, all three being seated in the front seat of the Chevrolet sedan. The highway was wet, it having rained during the day, but apparently at the time of the accident no rain was actually falling although it was testified there was considerable moisture on the windshield. The windshield wiper, however, was not in operation at that particular time.

There is some question as to whether or not those in the car saw the pedestrian before being struck; at one time they stated they saw no one until after the impact but at the trial they testified that just before striking Buchignoni and while going at a speed of approximately 40 or 45 miles an hour they suddenly saw the form of a man practically in front of the car, about fifteen feet away and in the center of defendant's half of the pavement, walking in a westerly direction, Mr. DeHaven traveling in an easterly direction. He testified that he immediately applied his brakes and swerved to the left but was unable to avoid striking the man. The car continued across the highway and finally overturned to the north of the pavement and on the dirt shoulder approximately 125 feet from the point of impact. The point of impact was established by the presence of broken glass from the right headlight and by flesh and pieces of cloth which were found approximately 120 feet back of where the body of the deceased lay after the accident, and which point of impact apparently was on the southwesterly edge of the roadway or just south of the traveled portion of the roadway and off the concrete pavement.

The physical facts as testified to by eye-witnesses who examined the roadway immediately after the accident and the next morning seem to bear out the implied finding of the jury that the pedestrian was not seen by the occupants of the car until after the impact. No skid marks were found

at or near the point where the deceased was struck and apparently no effort was made to apply the brakes until after the driver realized that he had run into something. The presence of glass, cloth, blood and flesh also seem to demonstrate the fact that the pedestrian was not upon the paved portion of the highway but was walking on the macadam on the proper side of the highway. The driver testified that there was no car approaching to blind him and that he was able to see 100 to 200 feet ahead and his lights were burning on the upper beam.

From these physical facts the jury had the right to conclude that deceased was walking close to his left-hand side of the traveled portion of the highway and that DeHaven was guilty of negligence either due to obscured vision, regardless of which he continued at a high rate of speed and did not have his car under that degree of control which the law requires of a driver to protect other persons lawfully using the road, or if DeHaven did have a clear vision of the road ahead he failed to keep the proper lookout, or that the automobile was so overcrowded with the presence of three large men who were occupying the front seat that the driver was unable to operate the car properly.

In regard to the overcrowding of the front seat of the automobile it was stipulated that the front cushion of the car was 42 inches wide and that the three men seated thereon weighed respectively 180, 180 and 215 pounds.

If the jury believed that the driver's vision was obscured and that he was driving 40 or 45 miles an hour when blinded by lights or by spray on the windshield, then it is clear that defendant was not operating his car with the ordinary care with which he was charged. (*Hatzakorzian* v. *Rucker-Fuller Desk Co.,* 197 Cal. 82 [239 Pac. 709, 41 A. L. R. 1027].)

On the other hand if DeHaven did have a clear vision he was not keeping the proper lookout and his automobile was overcrowded. Our courts have frequently held that it is the duty of a driver of an automobile when the view is unobstructed to see persons walking on the highway in front of the car. (*Nichols* v. *Nelson,* 80 Cal. App. 590 [252 Pac. 739] ; *Warner* v. *Bertholf,* 40 Cal. App. 776 [181 Pac. 808].)

The jury have by their verdict found that the deceased was walking on his left-hand side of the highway as required by law. (Vehicle Code 1935, sec. 564.) Deceased was not

required by this section to walk completely off the roadway. The word "roadway" being defined in section 83 of the Vehicle Code as "that portion of a highway improved, designed, or ordinarily used for vehicular traffic".

Appellant cites several cases in support of his contention that the judgment should be reversed but practically all the cases he cites are crossing cases which are not applicable to the facts in the present case.

In the case of *Finkle* v. *Tait*, 55 Cal. App. 425 [203 Pac. 1031], a pedestrian was there crossing the street and the court held that the pedestrian, in the exercise of ordinary care, could and should have seen the lights of the approaching car and avoided it. He was carrying a box of raisins upon his shoulder in such a position that his vision may have been obscured.

In the present case the deceased was walking where the law required him to walk, he had the right to assume that other persons using the highway would obey the law, keep a proper lookout to avoid hitting him; he was not required at his peril to dodge automobiles when he was obeying the law. (*White* v. *Davis*, 103 Cal. App. 531 [284 Pac. 1086]; *McVea* v. *Nickols*, 105 Cal. App. 28 [286 Pac. 761].)

The case of *Eveleth* v. *Goodchap*, 5 Cal. App. (2d) 735 [43 Pac. (2d) 376], involved a pedestrian crossing a bridge. There the plaintiff stepped in front of the automobile. It was the duty of the pedestrian to look in the direction in which the danger might be anticipated, and his failure to do so constituted contributory negligence.

Likewise in the case of *Nakamoto* v. *Testino*, 2 Cal. App. (2d) 266 [37 Pac. (2d) 864]. There the pedestrian was crossing the street without looking in either direction but looking at the ground.

*Wagy* v. *Brave*, 133 Cal. App. 413 [24 Pac. (2d) 209], was also a case of a pedestrian crossing the street at night and he was held guilty of contributory negligence because of his failure to keep a proper lookout.

Appellant also claims that the court committed prejudicial error in certain of its instructions to the jury. At the request of plaintiff the trial court instructed the jury to the effect that it was the duty of the defendant DeHaven, as he approached the point on the highway where the deceased was walking, not only to keep a vigilant lookout ahead but also actually to see and observe the deceased if he was walk-

ing along said highway in front of and in full view of defendant DeHaven, and if the defendant DeHaven, under such circumstances, failed to exercise ordinary care to see and observe the deceased before striking him, DeHaven was guilty of negligence. Appellant cites in support of his criticism of this instruction, *Prato* v. *Snyder,* 12 Cal. App. (2d) 88 [55 Pac. (2d) 255]. In effect, however, this instruction merely states the general rule that one must see that which is visible, and when we examine the numerous instructions given by the court along the same line we·find that the court instructed the jury that DeHaven had a right to assume that other persons, including the deceased, would obey the law and that he had a right to assume that if the deceased intended to use the highway he would use that portion thereof which the law required pedestrians to use, and would not walk any place on the highway other than next to the left-hand edge of the highway. And further, that if the deceased was walking along the highway at a place other than close to the left-hand edge of the highway, the said deceased was guilty of negligence as a matter of law, and if such negligence proximately contributed in the slightest degree to the accident, plaintiff could not recover.

The court also instructed the jury that it was the duty of DeHaven to keep a vigilant lookout ahead for other persons lawfully using the highway and to anticipate the presence of such persons, and it was his duty under the law to keep his machine under control as would enable him, under the exercise of ordinary care, to avoid collision, provided that the deceased was using proper care and caution.

It seems clear, therefore, from the foregoing instructions that the jury could not have been led to believe by the criticized instruction that DeHaven was chargeable with negligence if he failed to see deceased, no matter how the latter was using the highway. The instruction clearly stated that unless Buchignoni was walking close to his left-hand edge of the roadway, as the law requires, plaintiffs could not recover.

In another instruction the court told the jury that the legal right of the defendant DeHaven to drive and operate his automobile upon a public highway was not in any sense superior to the right of the deceased to walk upon and along such highway. Appellant claims that this instruction told the jury that the defendant did not have the right of

way at the time and place of the accident, regardless of the conduct of the deceased. The other instructions very clearly pointed out to the jury, however, that the deceased had no lawful place on the highway except close to his left-hand edge thereof.

We do not believe the court erred in either of these particulars as claimed by appellant.

It is also claimed that the court erred in refusing to give certain instructions as requested by the defendant. From an examination of these proposed instructions we believe the court was correct in refusing to give the same, first, because in most instances the jury had already been instructed upon the principle contained in the proffered instructions, and that, in some instances, the proposed instructions assumed facts not in evidence, such as, for instance, that the deceased was crossing the highway, and, in other instances, that the proposed instructions appeared to be confusing and involved.

Without quoting these various instructions we need merely say that we have read the same, and find that refusal to give these instructions did not lead to a miscarriage of justice, and the court was entirely justified in its refusal.

It appears that the instructions given, fully and fairly defined the law as applicable to the facts before the jury, and that no error was committed by the court either in giving instructions as given or in refusing those offered by the defense.

For the foregoing reasons the judgment should be affirmed, and it is so ordered.

Thompson, J., and Plummer, J., concurred.