[Civ. No. 9082.   Fourth Dist., Div. Two.   May 2, 1969.]

CHARLES EUGENE MYERS, a Minor, etc., Plaintiff and Respondent, v. JERRY STEVENS KING, a Minor, etc., et al., Defendants and Appellants.

Wilson, Wilson & Borror and Caywood J. Borror for Defendants and Appellants.

Ryneal, Hunt & Palladino and Fred H. Ryneal for Plaintiff and Respondent.

TAMURA, J.—Plaintiff, a 14-year-old boy, was walking along his left-hand side of a two-lane road, facing on-coming traffic, when he was struck from behind by a vehicle operated by defendant Jerry King who was then 17 years old. The present action is for damages for personal injuries suffered by plaintiff as a result of the accident.[1] Following judgment on a jury verdict for plaintiff the court granted plaintiff's motion for a new trial but limited it to the issue of damages. Defendants appeal from the judgment and the order granting new trial.

The accident occurred on November 2, 1964, at about 6 p.m. on State Street, a two-lane asphalt-paved road running in a generally easterly and westerly direction in unincorporated territory and outside a business or residence district. It was dusk and most of the vehicles had their lights on. The dirt shoulder on the southerly side of the road varied in width from 3 to 9 feet and was approximately 9 feet wide at the point where the accident occurred. Weeds 2 to 3 feet high were growing up to the roadway in certain areas along the

---

[1]Defendants are Jerry King, the driver of the vehicle involved in the accident, and his father, James King, who signed Jerry's application for a driver's license.

south shoulder. There was evidence that that condition prevailed in the vicinity where the accident occurred. The westbound lane was approximately 12 feet wide, but the east bound lane varied in width from 12 to 20 feet. The posted speed limit on State Street was 35 miles per hour.

Plaintiff was a sea cadet on his way to an inspection meeting at a naval reserve station located on State Street. He was wearing a dark sailor's uniform and a white hat. He entered State Street about one-fourth mile easterly from the point where he was struck. From the time he entered State Street he walked in a westerly direction on his left-hand side of the roadway within 1 to 2 feet north of the south edge of the paved portion of the road. Traffic on the eastbound lane was light and on the westbound lane moderate. Just before he was struck plaintiff heard the sound of a motor behind as it "revved" up. He was struck on his right side, thrown into the weeds on the shoulder of the road and rendered temporarily unconscious. When he regained consciousness he got up and walked under his own power to the naval reserve station, a distance of approximately 200 yards.

Defendant Jerry King, accompanied by Marvin McKeeg, was driving westerly on State Street in a friend's vehicle. He testified that when he was approximately a mile from where the accident occurred he observed a vehicle about one-half mile ahead of him travelling in the same direction at a speed which he estimated to be 25-30 miles per hour; that he (Jerry King) was travelling at approximately 35 miles per hour; that when he caught up with the vehicle he waited a while and, observing no on-coming vehicles, pulled left to overtake it; that he looked to his right to see that he had cleared the vehicle, glanced at his speedometer and noted that he was going 33 miles per hour, and started to accelerate; that as he came abreast of the vehicle he was overtaking he saw plaintiff approximately 2 feet within the edge of the paved portion of the road; that he screamed, thought he may have "swerved" the wheel, and panicked; that Marvin grabbed the wheel and they brought their car to a stop; that as soon as they stopped he (Jerry King) jumped into the back seat and started crying; that at Marvin's suggestion they picked up the owner of their car and drove back to the scene of the accident; that when they returned they observed plaintiff at the front of the naval reserve station and took him to a hospital; and that on the way to the hospital when plaintiff was asked why he was walking on the road he replied that he wanted to avoid get-

ting his shoes dirty. On cross-examination Jerry King testified he pulled to the left to overtake the other vehicle at a point east of a "T" intersection, was in the passing lane as he entered the intersection, and that the accident occurred just west of the intersection.

Plaintiff was treated at the hospital and sent home the same evening. Thereafter he was treated by several doctors for a lump which developed on his right thigh just below his buttock. Ultimately surgery was required for the removal of a large nodular mass 8 inches long and 4 inches wide and about 2 inches thick. The doctor diagnosed the condition as "encapulated hematoma" caused by an injured blood vessel and the formation of internal scar tissues. The mass had caused plaintiff constant pain. Plaintiff's doctor testified that plaintiff suffered permanent injury to his femoral nerve as well as scarring and atrophy of the area in which the mass developed and that plaintiff is unable to participate in contact sports or those requiring prolonged physical activity. Special damages totalled $587.30.

The jury returned a verdict for $1 500. The court granted plaintiff's motion for a new trial limited to the issue of damages subject to the condition that if defendants consented to an additur of $6,500, the motion would be denied.

Defendants' principal contention is that the trial court committed prejudicial error in refusing certain instructions premised upon the applicability of section 21954, subdivision (a) of the Vehicle Code relating to the duty of a pedestrian to yield the right of way to vehicles.[2] Section 21954 subdivision (a) provides: "Every pedestrian *upon* a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway." [Italics added.] The word "upon" was substituted for the word "crossing" in 1961. Defendant argues that as a result of the 1961 amendment to section 21954, subdivision (a), a pedestrian anywhere upon a roadway, except when in a crosswalk (marked or unmarked), must yield the right-of-way to all vehicles.

Plaintiff, on the other hand, urges that the amendment was not intended to require a pedestrian who is walking along the left-hand side of a roadway in compliance with section 21956, to yield the right-of-way to vehicles approaching from the rear. Section 21956 provides: "No pedestrian shall walk upon

---

[2]All references in this opinion to code sections are to the Vehicle Code unless otherwise specifically indicated.

any roadway outside of a business or residence district otherwise than close to his left-hand edge of the roadway." Section 530 defines "roadway" as "that portion of a highway improved, designed, or ordinarily used for vehicular travel."

Resolution of the issue thus presented requires a brief review of the history of the right of a pedestrian to walk along a highway.

Under the common law, pedestrians had an equal right with motorists to travel anywhere upon a public highway. (*Hatzakorzian* v. *Rucker-Fuller Desk Co.*, 197 Cal. 82, 95 [239 P. 709, 41 A.L.R. 1027] ; *Raymond* v. *Hill.* 168 Cal. 473. 482 [143 P. 743].) With the advent of the automobile age, it became necessary to adopt rules allocating the rights of pedestrians and motorists to use a highway. The late Professor Jacobus tenBroek has provided us with an excellent summation of the rules in his article on *The Disabled in the Law of Torts*, 54 Cal.L.Rev., pp. 896-897, where he states: "Rules of the road have been developed by custom, statute and ordinance to make it possible for the hordes of pedestrians and drivers to use the roads and streets efficiently, with maximum satisfaction and minimum injury to all in the exercise of equal rights. Otherwise, automobiles would have to proceed at the pace of the slowest pedestrian. These rules generally provide that the pedestrian has the right of way in marked cross walks, at intersections, and on the side of the road. Drivers have the right of way elsewhere. Drivers and pedestrians alike must proceed with due care even when they have the right of way. When they do not have the right of way, they may still proceed but must do so with care appropriate in the circumstances, including the circumstance that others have the right of way. . . . [Fns. omitted.]"

One of the rules apportioning rights between pedestrians and motorists is that presently embodied in section 21956. The rule was first adopted in 1929 by the addition of section 150½ to the Vehicle Act of 1923 (Stats. 1929, ch. 253, p. 546.) That section qualified the common law right of a pedestrian to travel anywhere upon a highway by making it unlawful for a pedestrian to walk "along and upon any highway outside of a business or residential district otherwise than close to his left-hand edge of the highway." Its purpose was to require pedestrians to keep on-coming traffic in view so that they may take such action as may be necessary under the circumstances for their own safety and also to protect them from the quiet approach or confusion that may be caused by the noise of a

vehicle aproaching from the rear. (*Scalf* v. *Eicher*, 11 Cal. App.2d 44, 51 [53 P.2d 368].) A pedestrian walking along a highway other than on his left-hand side was held to be negligent per se. (*Scalf* v. *Eicher*, *supra*, p. 52.) A pedestrian walking along the left-hand side of the highway in compliance with the section was held not to be under a legal duty to look back or watch behind him to see whether he is in danger of being run down by a vehicle approaching from the rear. (*Olson* v. *Meacham*, 129 Cal.App. 670, 679 [19 P.2d 527].) A pedestrian was not under such a legal duty prior to the adoption of section 150½. (*Hatzakorzian* v. *Rucker-Fuller Desk Co.*, *supra*, 197 Cal. 82, 95; *Idemoto* v. *Schneidccker*, 193 Cal. 653, 661 [226 P. 922]; *Raymond* v. *Hill*, *supra*, 168 Cal. 473, 482.)

In 1935 section 150½ was re-enacted into its present form as section 564 of the Vehicle Code. (Stats. 1935, ch. 27, p. 188.) The only significant change from former section 150½ was the substitution of the word "roadway" for the word "highway." Under section 150½ it was held that one walking on a right-hand dirt or gravelled shoulder was walking upon the "highway" and, hence, was in violation of the statute. (*Scalf* v. *Eicher*, *supra*, 11 Cal.App.2d 44, 51.) The confusion stemming from the use of the word "highway," a word with varying connotations depending upon the context of its use, was eliminated by substituting for it the word "roadway" and defining "roadway" (§ 83, Veh. Code of 1935, now § 530) as "that portion of a highway improved, designed or ordinarily used for vehicular traffic."[3]

Under section 564 of the 1935 Vehicle Code a pedestrian walking near the left-hand edge of the "roadway" was not required to be completely off the "roadway" (*Buchignoni* v. *DeHaven*, 23 Cal.App.2d 76, 79-89 [72 P.2d 159]; *Keating* v. *Zumwalt*, 91 Cal.App.2d 845, 847 [206 P.2d 10]) and the rights of a motorist were not superior to the rights of a pedestrian walking along his left-hand side of the "roadway" in compliance with that section. (*Buchignoni* v. *De Haven*, *supra*, pp. 81-82.) Present section 21956 being but a

---

[3]Under section 564 of the Vehicle Code of 1935 (now § 21956), a pedestrian may walk on the right side of a highway so long as it is outside of the limits of the "roadway." (*Gioldi* v. *Sartorio*, 119 Cal. App.2d 198, 200 [259 P.2d 62]; *Lesser* v. *McCullough*, 90 Cal.App.2d 586, 589-590 [203 P.2d 832]; *Summers* v. *Dominquez*, 29 Cal.App.2d 308, 311-312 [84 P.2d 237].) Where the evidence is in conflict as to whether the shoulder of the road is a part of the "roadway," a factual question is presented for the trier of fact. (*Fry* v. *Young*, 267 Cal.App.2d 340, 349 [73 Cal.Rptr. 62]; *Summers* v. *Dominquez*, *supra*, p. 312.)

reenactment of section 564 of the Vehicle Code of 1935, the same rights are reserved to a pedestrian under section 21956.

In the absence of more explicit words, it would be unreasonable to assume that by the one word 1961 amendment to subdivision (a) of section 21954 relating to pedestrians outside of crosswalks, the Legislature intended to qualify the long established and familiar rule reserving to pedestrians the limited right of walking near the left-hand edge of a roadway. Rather, as suggested by defendant, it is more reasonable to assume that the Legislature substituted the word ''upon'' for the word ''crossing'' in section 21954, subdivision (a) to eliminate the confusion that theretofore existed whether one standing in a roadway was ''crossing'' within the meaning of the section. (See *Newton* v. *Thomas,* 137 Cal.App.2d 748, 762 [291 P.2d 503]; *Kuist* v. *Curran,* 116 Cal.App.2d 404, 409 [253 P.2d 281]; *Dennis* v. *Gonzales,* 91 Cal.App.2d 203, 206 [205 P.2d 55].)

Moreover, it is a general rule of statutory interpretation that an implied amendment of one code section by an express amendment of another code section is disfavored, particularly where the unamended section has been generally understood and acted upon. (*People* v. *Leong Fook,* 206 Cal. 64, 69-70 [273 P.2d 779]; *Lambert* v. *Conrad,* 185 Cal.App.2d 85, 93 [8 Cal.Rptr. 56]; *City of Burbank* v. *Metropolitan Water Dist.,* 180 Cal.App.2d 451, 462 [4 Cal.Rptr. 757]; *People* v. *Derby,* 177 Cal.App.2d 626, 629-630 [2 Cal.Rptr. 401].) An amendment should be implied only where there is no reasonable basis for harmonizing the amended section with the unamended. (*Lambert* v. *Conrad, supra,* p. 93.) Legislative intention to overthrow long-settled principles of law should not be presumed in the absence of an express declaration or unless necessarily implied. (*Brown* v. *Memorial Nat. Home Foundation,* 162 Cal.App.2d 513, 537 [329 P.2d 118, 75 A.L.R.2d 427]; *Guardianship of Thrasher,* 105 Cal.App.2d 768, 777 [234 P.2d 230].) While those rules of statutory interpretation are not inflexible or infallible but are merely aids in ascertaining legislative intent, we believe them to be particularly relevant in the present case. The left-hand side rule embodied in section 21956 relates to pedestrians *walking along* a highway whereas section 21954 relates to people *crossing or upon* a highway; the two sections may be harmonized without implying an amendment of the former by the 1961 amendment of the latter. The fact that the left-hand side rule is so familiar to the general public and relied upon by pedestrians ren-

ders it highly unlikely that the Legislature intended to qualify it by the amendment to section 21954, subdivision (a).

We conclude that section 21954, subdivision (a) is not applicable to a pedestrian walking in compliance with section 21956 and that the court properly refused instructions based on the former.

It does not follow, of course, that a pedestrian by walking along a highway in compliance with section 21956 is thereby excused from exercising due care. The fact that he is walking in a place permitted by statute does not necessarily establish freedom from negligence. (See *Smith* v. *Sugich Co.*, 179 Cal.App.2d 299, 311 [3 Cal.Rptr. 718]; *O'Brien* v. *Schellberg*, 59 Cal.App.2d 764, 768 [140 P.2d 159].) However, in the case under review, the court gave detailed instructions on the duty of a pedestrian, situated as was plaintiff and taking into account his age, to exercise due care for his own safety. The court properly submitted to the jury the question whether plaintiff was walking in compliance with section 21956 and the issue of defendants' negligence and plaintiff's contributory negligence.

Defendants' contention that the court should have given an instruction on assumption of risk is without merit. The argument is based upon plaintiff's testimony that he saw two westbound vehicles up ahead of him overtake other vehicles and by observing the tail lights estimated that the overtaking vehicles came within 3 feet of the edge of the left-hand side of the roadway. The evidence was insufficient to warrant an assumption of risk instruction. The passing occurred "up ahead" of plaintiff. There is no evidence that any vehicle travelling in the same direction as plaintiff made a passing movement behind him or next to him or came within 3 feet of the edge of the roadway as it passed him. To justify application of the doctrine of assumption of risk there must be evidence to show that the victim had knowledge and appreciation of the specific danger involved. (*Vierra* v. *Fifth Avenue Rental Service*, 60 Cal.2d 266, 271 [32 Cal.Rptr. 193, 383 P.2d 777]; *Sweeny* v. *Stone*, 265 Cal.App.2d 693, 697 [71 Cal.Rptr. 497]; *Crain* v. *Sestak*, 262 Cal.App.2d 478, 489 [68 Cal.Rptr. 849].) There must be a voluntary acceptance of the specific risk involved and such acceptance, whether expressed or implied, must have been with knowledge and appreciation of the risk. (See *Grey* v. *Fibreboard Paper Products Co.*, 65 Cal.2d 240, 244 [53 Cal.Rptr. 545, 418 P.2d 153]; *Vierra* v. *Fifth Avenue Rental Service, supra*.) The

rationale of the doctrine has been expressed by Professor Prosser as follows: " 'Knowledge of the risk is the watchword of assumption of risk.' Under ordinary circumstances the plaintiff will not be taken to assume any risk of either activities or conditions of which he is ignorant. Furthermore, he must not only know of the facts which create the danger, but he must comprehend and appreciate the danger itself . . . If because of age, or lack of information or experience, he does not comprehend the risk involved in a known situation, he will not be taken to consent to assume it. His failure to exercise ordinary care to discover the danger is not properly a matter of assumption of risk, but of the defense of contributory negligence. [Fns. omitted.]'' (Prosser, Torts (3d ed.) p. 462.) ▮ The evidence upon which defendant relies was relevant to the issue of contributory negligence but insufficient to support an assumption of risk instruction. The evidence was insufficient to show knowledge of the specific risk—danger of being struck from behind—or comprehension of such danger.

▮ Defendants' contention that the court erred in refusing a modified form of BAJI 201C, an instruction designed to state a pedestrian's duty to make reasonable observation before attempting to cross a street, is likewise without substance. The instruction was erroneously premised upon the applicability of section 21954, subdivision (a) to a pedestrian walking along a highway in compliance with section 21956, and was, hence, properly refused.

Finally, defendants contend that the court abused its discretion in granting a new trial limited to the issue of damages.

▮ The decision on limiting a new trial to the issue of damages rests in the first instance in the sound discretion of the trial judge. (*Cary* v. *Wentzel,* 39 Cal.2d 491, 492 [247 P.2d 341]; *Leipert* v. *Honold,* 39 Cal.2d 462, 467 [247 P.2d 324, 29 A.L.R.2d 1185]; *Berg* v. *Sonen,* 230 Cal.App.2d 434, 436 [41 Cal.Rptr. 37].) ▮ A new trial limited to the damage issue may be ordered where it can be reasonably said that the liability issue has been determined by the jury. (*Hamasaki* v. *Flotho,* 39 Cal.2d 602, 606 [248 P.2d 910].)

▮ An abuse of discretion must be shown before a reviewing court will reverse the trial judge's decision. (*Leipert* v. *Honold, supra,* 39 Cal.2d 462, 467; *Berg* v. *Sonen, supra,* 230 Cal.App.2d 434, 436.)

▮ An abuse of discretion is shown when the record

reveals "that the issue of liability is close, the damages are inadequate, and there are other circumstances that indicate that the verdict was probably the result of a compromise of the liability issue." (*Rose* v. *Melody Lane,* 39 Cal.2d 481, 488 [247 P.2d 335] ; *Leipert* v. *Honold, supra,* 39 Cal.2d 462, 467 ; *Berg* v. *Sonen, supra,* 230 Cal.App.2d 434, 436.)

In the present case it cannot be said that the issue of liability was "close." The evidence was uncontradicted that plaintiff was walking near the left-hand edge of the roadway in compliance with section 21956 when he was struck from behind by the vehicle operated by defendant while the latter was attempting to overtake another vehicle. In the general area where the accident occurred the eastbound or passing lane was approximately 20 feet wide affording defendant ample room to overtake the vehicle without striking plaintiff. As in every contested case, there was conflicting evidence on issues of negligence and contributory negligence but we cannot say that the liability issue was "close" in the sense that word is used in determining whether the trial judge abused his discretion in granting a limited new trial.

On the issue of damages, the jury awarded $1,500. The specials being $568, general damages were awarded in the sum of $932. While the verdict was "low," as defendants concede, it was not so grossly inadequate as to indicate a compromise verdict on the issue of liability. The present case is unlike *Rose* v. *Melody Lane, supra,* 39 Cal.2d 481, or *Cary* v. *Wentzel, supra,* 39 Cal.2d 491, where the awards were less than the admitted specials and the liability issue was extremely close.

Defendant argues that *Hamasaki* v. *Flotho, supra,* 39 Cal. 2d 602, requires us to find an abuse of discretion in the present case. *Hamasaki* is clearly distinguishable. In that case the issue of liability was extremely close. Plaintiff, a six-year-old boy, darted out into the street from in front of a parked truck and was struck by defendant's vehicle. There was substantial evidence which would have supported a verdict for defendant. On the issue of damages, the boy suffered several fractures of the skull, three of which were extensive, one resulting in a separation of almost one-half inch and depression of almost one-quarter inch, two puncture wounds in the forehead, brain concussion and complete fracture of the collar bone. There was evidence which, while disputed, indicated that as a result of the accident, the child was suffering from "permanent psychomotor epilepsy," and would require con-

tinuous medical care throughout his life. Despite the severity of the injuries, the jury awarded only $1,000, including $817.10 specials, resulting in an award of general damages of but $182.90.

In the present case plaintiff suffered some severe bruises but no broken bones. Immediately after being struck, he was able to walk under his own power to the naval reserve station some 200 yards away. He was taken to the hospital for treatment but was released to return home the same evening. Testimony by plaintiff's doctor that the lump which developed on plaintiff's thigh caused permanent injury to his femoral nerve was strongly questioned by defendant because medical and hospital records failed to make any specific mention of such injury. It is reasonable to infer that the low verdict may have resulted from the jury's difficulty in assessing damages rather than from its inability to decide the liability issue. Although the trial judge stated that if defendant consented to an additur of $6,500, the motion for a new trial would be denied, that is only one of the factors to be considered in determining whether the award was so ''grossly inadequate'' as to suggest a compromise on the issue of liability. The present case is not one involving ''aggravated circumstances, forcefully'' showing that the liability issue was compromised. (*Berg* v. *Sonen*, *supra*, 230 Cal.App.2d 434, 440.)

The judgment is affirmed on the issue of liability; the order granting a limited new trial on the issue of damages is affirmed.

McCabe, P. J., and Kerrigan, J., concurred.

A petition for a rehearing was denied May 29, 1969.