[Crim. No. 17462. First Dist., Div. Three. Jan. 14, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
CARL JOSEPH EAKER, Defendant and Appellant.

[Crim. No. 17780. First Dist., Div. Three. Jan. 14, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD DAVID SAGIN, Defendant and Appellant.

1008

COUNSEL

William Flenniken, Jr., under appointment by the Court of Appeal, Sheldon Portman, Public Defender, Morris Schachter, Deputy Public Defender, Quin Denvir, State Public Defender, and Mark Fogelman, Deputy State Public Defender, for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Michael Buzzell, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

SCOTT, J.—Appellants Carl Eaker and Ronald Sagin were convicted after trial by jury of first degree murder (Pen. Code, § 187) and first

degree burglary (Pen. Code, § 459). The jury found that appellant Sagin had used a firearm in the perpetration of the murder (Pen. Code, § 12022.5). Both appellants were sentenced to prison.

In the early morning hours of February 11, 1977, after each appellant had consumed a fifth of wine and injected a quarter spoon of heroin, they drove to an apartment building in Santa Clara, forced their way into an apartment, and proceeded to load their car with stolen goods. During the loading process appellants were approached by three men, one of whom, Zemke, the manager of the apartment building, told appellants to return the stolen items. Sagin drew a handgun, with which he shot and killed Zemke. Appellant Sagin testified that he and appellant Eaker committed the burglary, but that the shooting of Zemke was done in self-defense.

■ Appellant Sagin contends that the court erred in its instructions on the felony-murder doctrine (CALJIC No. 8.21) because the court failed to define malice, a necessary element of murder. The contention is without merit. The felony-murder doctrine imputes malice to a person who kills in the perpetration of a burglary. (*People* v. *Ford* (1964) 60 Cal.2d 772 [36 Cal.Rptr. 620, 388 P.2d 892]; Pen. Code, § 189). ■ Sagin further contends that the felony-murder instructions deprived him of his right to have the jury determine whether the killing was in the perpetration of the burglary. The jury was instructed: "A homicide is committed in the perpetration of a felony if the killing and the felony are parts of one continuous transaction. There is no requirement that the homicide occur while committing or while engaged in the felony or that the killing be a part of the felony other than that the two acts be parts of one continuous transaction." This instruction correctly states the law. (*People* v. *Chavez* (1951) 37 Cal.2d 656 [234 P.2d 632]; *People* v. *Welch* (1972) 8 Cal.3d 106, 118 [104 Cal.Rptr. 217, 501 P.2d 225].)

Appellant Sagin argues, in effect, that there was evidence that the homicide occurred during an escape and that an escape after a burglary should not, as a matter of law, be considered as part of the "continuous transaction" begun by the burglary. Sagin concludes, therefore, that the *Chavez* instruction, which suggests a contrary rule, prejudiced him. However, in *People* v. *Fuller* (1978) 86 Cal.App.3d 618 [150 Cal.Rptr. 515], the court rejected the argument that for purposes of the felony-murder rule burglary does not include escape. If the homicide was com-

mitted during an escape from the burglary, it was a part of one continuous transaction; therefore, the court properly instructed the jury. Furthermore, there is no evidence that the homicide was committed during an escape from the burglary. The evidence was that the shooting occurred while appellants were in the process of loading the stolen goods into their car. The burglary itself was still in progress. An attempted escape had not begun. The "continuous transaction" instruction was appropriate to instruct the jury as to a homicide committed outside the burglarized structure during the contraband loading process.

█ The court refused to give an instruction proposed by appellant Sagin, requesting that the jury decide whether, due to his consumption of a fifth of wine and injection of a quarter spoon of heroin, he had the capacity to formulate the specific intent required for a burglary.

Penal Code section 22 provides that "whenever the actual existence of...intent is a necessary element to constitute any particular...crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the...intent with which he committed the act." The foregoing instruction is mandatory when ""'there is any evidence deserving of any consideration whatever,'"" but "instructions on diminished capacity 'need not be given when the evidence of diminished capacity is minimal.'" (*People v. Mayberry* (1975) 15 Cal.3d 143, 151 [125 Cal.Rptr. 745, 542 P.2d 1337], italics and citations omitted.) Here, however, Sagin testified that he entered the apartment with the intent to steal. Having made such an unqualified admission, there was no longer any doubt as to his capacity to form the requisite intent. Under the rule or *Mayberry,* the refusal to give the instruction was proper.

█ The trial court instructed the jury on first degree burglary and felony murder, but refused both appellants' requests for instructions on second degree murder and manslaughter. █ "[B]ased on the elementary principle that the court should instruct the jury on every material question" (*People v. St. Martin* (1970) 1 Cal.3d 524, 533 [83 Cal.Rptr. 166, 463 P.2d 390]), a court is obliged to instruct "on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present" (*People v. Sedeno* (1974) 10 Cal.3d 703, 715 [112 Cal.Rpt⁻. 1, 518 P.2d 913]), or "whenever there is 'any evidence deserving of any consideration whatsoever'"

that "tends to prove" that a lesser crime was committed. (See *Sedeno* at p. 716; *St. Martin,* p. 533.)

An erroneous failure to give instructions on lesser included offenses is curable, however. If the jury is *fully* instructed on the factual issue raised by the defendant, and it is clear from a verdict based on such instructions that the jury *necessarily* resolved the factual question adversely to the defendant, then the failure to instruct on lesser included offenses will not constitute grounds for reversal. (*Sedeno, supra,* 10 Cal.3d 703, 721.)

■ Appellant Eaker did not testify at trial. However, he presented evidence similar to that of Sagin, that he had consumed a fifth of wine and injected a quarter spoon of heroin shortly before the burglary. He thereby put into issue the question of capacity to form the intent required for conviction of burglary and felony murder. As such it was appropriate to give lesser included offenses instructions on second degree murder and manslaughter. The error, however, was "cured" by an application of the principles enunciated in *Sedeno*. The jury here was fully instructed as to the elements of Eaker's diminished capacity defense and the applicability of the defense to the burglary and felony-murder charges. It was also clearly instructed that it must acquit Eaker of both charges if it found diminished capacity. In finding him guilty on both counts, therefore, the jury clearly and necessarily rejected the defense. Although the trial court erred in failing to instruct on lesser included offenses, the error was cured by the thorough instructions given on diminished capacity and felony murder.

Both appellants also contend that the evidence raised a sufficient question as to whether the homicide was committed in the perpetration of the burglary to warrant instructions on lesser included offenses. It appears, however, that the jury was fully instructed on what constituted a killing in the perpetration of a felony as related to the one continuous transaction principle, as we have previously discussed, and it is implicit in the jury's verdict that they concluded the killing was perpetrated during the commission of the burglary.

■ We turn now to Sagin's contention that the court erred in determining that he was ineligible for commitment to the California Youth Authority pursuant to Welfare and Institutions Code section 1731.5.

Subdivision (b) of section 1731.5 provides that a court is precluded from committing to the Youth Authority any person sentenced to life imprisonment. Sagin received a life sentence as required by former Penal Code section 190.[1]

Sagin contends, however, that Welfare and Institutions Code section 707.2 permits a different result. Section 707.2 provides in pertinent part: "No minor who was under the age of 18 years when he committed any criminal offense...shall be sentenced to the state prison unless he has first been remanded to the custody of the California Youth Authority for evaluation and report pursuant to this section and the court finds after having read and considered the report submitted by the Youth Authority that the minor is not a suitable subject for commitment to the Youth Authority." Sagin was 17 at the time of the homicide.

Here, Sagin was committed to the Youth Authority for presentencing evaluation and report, as required by Welfare and Institutions Code section 707.2. The Youth Authority considered Sagin to be a fit and proper subject for treatment in the Youth Authority facilities. However, they were of the opinion, in accordance with directions from the Attorney General, that Sagin was ineligible for Youth Authority commitment because he had been convicted of a crime requiring life imprisonment, and therefore was ineligible pursuant to Welfare and Institutions Code section 1731.5. The Supreme Court has recently held that a Youth Authority report recommending Youth Authority commitment is entitled to great weight, and that an inconsistent judicial finding must be supported by "substantial countervailing considerations." (*People* v. *Carl B.* (1979) 24 Cal.3d 212, 215 [155 Cal.Rptr. 189, 594 P.2d 14].) Although the sentence in the instant case predated *Carl B.*, the trial judge made clear that his prison sentence was imposed not because he necessarily considered Sagin unfit for Youth Authority commitment, but rather that he considered that the law gave him no alternative.

---

[1]Section 190 has since been amended and provides three possible sentences: death, life imprisonment without possibility of parole, and 25 years to life. Since Sagin was convicted of felony murder including first degree burglary, he would be sentenced to life without possibility of parole under the current statute (Pen. Code, § 190.2, subd. (a)(17) (vii)), a harsher sentence than the one actually imposed. (See Pen. Code, § 3046.) We therefore have no cause to ask whether "25 years to life" is a life sentence for purposes of Welfare and Institutions Code section 1731.5.

Prior to 1975, Welfare and Institutions Code section 1731.5 (which has not been directly amended since 1969) was the primary statute dealing with an adult court's sentencing alternatives immediately after the conviction of a youthful offender. Concerning itself with persons *under 21* at the time of their apprehension, section 1731.5 gives general jurisdiction to the trial court to commit such persons to the Youth Authority. The power given is discretionary with the court, except in the case of certain persons, including those sentenced to death or to life imprisonment. Such persons may not be committed to the Youth Authority.

In 1975, without explicitly amending section 1731.5, the Legislature enacted Welfare and Institutions Code section 707.2, which substantially altered the sentencing procedures. (Stats. 1975, ch. 1266, § 6.) The new statute concerned itself only with persons *under 18* at the time of their offense. With respect to such persons, section 707.2 stripped the trial judge of discretion, and directed that, *with the exception of persons ineligible for Youth Authority commitment under section 1731.5,* minors could not be sentenced to state prison.

In 1976, section 707.2 was amended. (Stats 1976, ch. 1069, § 1.) The amended statute, in force when Sagin was sentenced and still in force, restored a certain amount of discretion to the sentencing judge. The statute provides that the final determination as to a minor's unsuitability for Youth Authority confinement is with the judge, but that such a determination must be preceded by referral of the minor to the Youth Authority for evaluation, and may not be made until the report of the Youth Authority is read and considered.

The instant controversy arises from the fact that all references to Welfare and Institutions Code section 1731.5 were deleted by the 1976 amendments. Whereas section 707.2 originally permitted a judge to refer any "eligible" minor to the Youth Authority for evaluation, now the statute simply states that "the minor" may be referred. And whereas the 1975 statute was explicitly made inapplicable to persons falling within the excepted categories found in section 1731.5, the statute now provides that "*no* minor who was under the age of 18 years when he committed *any* criminal offense...shall be sentenced to the state prison" (italics added) unless a declaration of unfitness follows a Youth Authority evaluation and report.

It appears that Welfare and Institutions Code section 1731.5 is the statute that defines whom an adult court may or may not ultimately commit to the Youth Authority, and Welfare and Institutions Code section 707.2 sets forth the conditions and procedure by which a minor may be sent to prison. In accordance with section 707.2, no minor can be sent to prison without first being evaluated by the Youth Authority, but subsequent to such evaluation a minor convicted of an offense warranting life imprisonment must be sent to prison. In a jurisdictional sense section 1731.5 is the statute that confers power on the adult sentencing court to send youthful offenders to the Youth Authority. Although the judge must comply with section 707.2 before sentencing a minor to prison, he must look to section 1731.5 and its qualifications before committing a minor to the Youth Authority. Sections 707.2 and 1731.5 are *in pari materia* and should be harmonized as though one statute. (*Isobe v. Unemployment Ins. Appeals Bd.* (1974) 12 Cal.3d 584, 590-591 [116 Cal.Rptr. 376, 526 P.2d 52].) Unless other constructions are unreasonable, a court should not look for amendment by implication of a code section whose meaning is settled. (*Myers* v. *King* (1969) 272 Cal.App.2d 571, 579 [77 Cal.Rptr. 625].) No major amendments need be implied if section 1731.5, subdivision (b) is read as is; whereas, if section 707.2 is found controlling, section 1731.5, subdivision (b) must be read as not applying to minors. We conclude that if a minor is convicted of an offense punishable as described in Welfare and Institutions Code section 1731.5, he is ineligible for commitment to the Youth Authority. (See also *People v. Chi Ko Wong* (1976) 18 Cal.3d 698, 724-725 [135 Cal.Rptr. 392, 557 P.2d 976].)

■ Appellant Eaker also contends that he was improperly denied an opportunity to disqualify the trial judge pursuant to Code of Civil Procedure section 170.6. The contention is without merit. The attorney for his codefendant, Sagin, had challenged a previously assigned judge at the time the case was assigned for trial on the master calendar. Eaker's attempt to disqualify the trial judge came on the second day of jury selection. His assertion of error fails for two reasons. The first is that the motion was untimely. Code of Civil Procedure section 170.6, subdivision (2) provides that such a motion to challenge a judge shall not be entertained if the motion is made after the drawing of the name of the first juror. Secondly, and the ground relied upon by the trial judge in denying the motion, each side is entitled to only one challenge and one challenge having already been made, another challenge was not available unless Eaker could prove that he had substantially adverse interests to those of Sagin. (*Pappa* v. *Superior Court* (1960) 54 Cal.2d

350, 353-354 [5 Cal.Rptr. 703, 353 P.2d 311].) No such adverse interests are demonstrated by the record.

Appellants' contentions of judicial misconduct are so lacking in merit that they do not require discussion.

Judgments are affirmed.

White, P. J., and Takei, J.,* concurred.

A petition for a rehearing was denied February 5, 1980, and appellants' petitions for a hearing by the Supreme Court were denied March 13, 1980. Mosk, J., was of the opinion that the petition in No. 17462 should be granted.

---

*Assigned by the Chairperson of the Judicial Council.