[Civ. No. 46586. Second Dist., Div. Five. Mar. 12, 1976.]

MARIAN VENZOR, Plaintiff and Appellant, v.
SANTA BARBARA ELKS LODGE, NO. 613,
Defendant and Respondent.

**COUNSEL**

Ghitterman, Schweitzer & Herreras, Allan S. Ghitterman and William A. Herreras for Plaintiff and Appellant.

Kinkle, Rodiger, Dewberry & Spriggs and S. James Colloran for Defendant and Respondent.

**OPINION**

**STEPHENS, Acting P. J.**—The third cause of action[1] of an amended complaint filed by Marian Venzor (appellant) alleged that she is the surviving spouse and sole surviving heir at law of Bruno Venzor (Bruno), who was killed on June 12, 1974, when he was struck by an automobile driven by Joe Leslie Atchinson, Jr. (Atchinson), and that at the time he was struck by Atchinson's automobile, Bruno was a pedestrian attempting to cross a public street. It was further alleged that Santa Barbara Elks Lodge, No. 613, (Lodge), at the time in question, was engaged in the business of selling alcoholic beverages to its members, including Bruno; that the Lodge served or permitted to be served to Bruno extremely large quantities of alcoholic beverages immediately prior to his death, as a proximate result of which Bruno became intoxicated, sick, helpless, and unable to care for himself; that after negligently putting Bruno in such condition, the Lodge negligently failed to render aid to Bruno to relieve such helpless condition and such failure to render aid was a proximate cause of Bruno's death; that the Lodge knew Bruno was to walk to his motor vehicle and drive it in such a helpless condition; and that Bruno was killed while he was intoxicated, sick, helpless, unable to care for himself, and incapable of "appreciating the risk of being struck by Atchinson's negligently operated motor vehicle." The complaint contained appropriate allegations of damages. On March 3, 1975, the court issued a minute order sustaining the general demurrer of the Lodge without leave to amend and ordering the case dismissed under Code of Civil Procedure section 581, subdivision 3. The judgment of dismissal was signed by the court on March 21, 1975, and filed March 25, 1975. Venzor appeals from the judgment.

*Contentions*

Appellant contends:

I. That the vendee of intoxicating liquor has a cause of action against the vendor for injuries to the vendee caused by his intoxication.

II. That *Li v. Yellow Cab Co.,* 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226], applies to this case and therefore contributory negligence is not an automatic bar to recovery.

---

[1]The first two causes of action related only to Joe Leslie Atchinson, the driver of an automobile which struck and killed Bruno Venzor, a pedestrian. The record does not disclose what disposition, if any, was made of the case insofar as it related to Atchinson.

III. That if *Li* does not apply to this case, the trial court did not consider that certain of appellant's allegations set forth the doctrine of "last clear chance," and that appellant should be allowed to amend her complaint to plead that doctrine.

### Discussion

Before reaching any of appellant's other contentions, we must first consider whether the decision in *Li* v. *Yellow Cab Co.,* 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226], governs the disposition of this appeal. If the standard of comparative negligence adopted by the California Supreme Court in *Li* were applicable, it would render discussion of appellant's remaining contentions unnecessary.

The judgment of dismissal in the instant case was entered on March 25, 1975; the opinion in *Li* was filed on March 31, 1975. Anticipating the problem of the decision's application to cases "other than those commenced in the future," the court in *Li* stated:

". . . . Upon mature reflection, in view of the very substantial number of cases involving the matter here at issue which are now pending in the trial and appellate courts of this state, and with particular attention to considerations of reliance applicable to individual cases according to the stage of litigation which they have reached, we have concluded that a rule of limited retroactivity should obtain here. Accordingly, we hold that the present opinion shall be applicable to all cases in which *trial* has not begun before the date this decision becomes final in this court, but that it shall not be applicable to any case in which *trial* began before that date (other than the instant case)—except that if any judgment be reversed on appeal for other reasons, this opinion shall be applicable to any retrial." (Italics added; *id.,* at p. 829.)

The court also concluded that a more extensive application of the comparative negligence standard enunciated by the court was not necessitated by the fact that other litigants in "various stages of trial or appellate process" would be foreclosed from benefiting from the new standard. (*Id.,* at p. 830.)

Given this limitation on the application of *Li,* the issue before us is whether a demurrer sustained without leave to amend and followed by a judgment of dismissal constitutes a "trial." ■ The following defini-

tion of the term "trial" has been repeatedly approved by the courts: "A trial is the examination before a competent tribunal, according to the law of the land, of the facts or law put in issue in a cause for the purpose of determining such issue. When a court hears and determines any issue of fact or of law for the purpose of determining the rights of the parties, it may be considered a trial." (*Tregambo* v. *Comanche M. and M. Co.,* 57 Cal. 501, 505; see also, *McDonough Power Equipment Co.* v. *Superior Court,* 8 Cal.3d 527, 531 [105 Cal.Rptr. 330, 503 P.2d 1338].[2]) In applying this definition of a "trial," the court in *Smith* v. *City of Los Angeles,* 84 Cal.App.2d 297, 302 [190 P.2d 943], concluded: "The foregoing defini- tion of a 'trial' includes trials which involve only questions of law. General demurrers such as were here interposed, challenging as they did the sufficiency of the facts, went direct [*sic*] to the determination of the rights of the parties, and all rights involved in the complaints. The judgments [of dismissal] rendered herein, being upon orders sustaining demurrers without leave to amend, constitute a trial on the merits, based upon issues of law raised by such demurrers, and must be considered as judgments after trial. [Citations.]"

Witkin also notes that "[i]n its broad meaning the term [trial] includes a trial on the law. But whether a hearing on demurrer constitutes a 'trial' usually depends upon the language and purpose of the particular statute." (4 Witkin, Cal. Procedure (2d ed.) Trial, § 2, at p. 2862.) In this regard, the word "trial," as used in various sections of the Code of Civil Procedure (including § 581 dealing with dismissal of an action), has been construed to include any proceeding in which a demurrer has been sustained and the ruling has been followed by a judgment of dismissal. (*McDonough Power Equipment Co.* v. *Superior Court, supra,* 8 Cal.3d 527, 532; *Berri* v. *Superior Court,* 43 Cal.2d 856, 859 [279 P.2d 8]; *Goldtree* v. *Spreckels,* 135 Cal. 666, 672 [67 P. 1091].)

In light of these foregoing principles, we find that in the instant case there was a trial before the effective date of the *Li* decision. As a result, the trial court's determination of the sufficiency of Venzor's complaint was governed by the legal principles utilized prior to *Li* (*i.e.,* contribu- tory negligence, last clear chance, assumption of the risk).

---

[2]The *result* in *McDonough* was subsequently nullified by amendment of section 583, subdivision (c), in 1972. However, this change did not affect the court's construction or use of the term "trial." (See 4 Witkin, Cal. Procedure (2d ed. 1975 Supp.), Proceedings Without Trial, § 114, at p. 15.)

Under these negligence rules, we first consider whether the present action is barred by decedent's (Bruno's) contributory negligence. In *Vesely* v. *Sager*, 5 Cal.3d 153 [95 Cal.Rptr. 623, 486 P.2d 151], civil liability was first imposed upon a vendor for providing alcoholic beverages to a customer who, as a result of intoxication, injured a third person. The court concluded: "In the instant case a duty of care is imposed upon defendant Sager by Business and Professions Code section 25602, which provides: 'Every person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage to any habitual or common drunkard or to any obviously intoxicated person is guilty of a misdemeanor.' This provision was enacted as part of the Alcoholic Beverage Control Act of 1935 (Stats. 1935, ch. 330, § 62, at p. 1151) and was adopted for the purpose of protecting members of the general public from injuries to person and damage to property resulting from the excessive use of intoxicating liquor." (Id., at p. 165.)

The court in *Vesely* specifically refrained from deciding "whether a person who is served alcoholic beverages in violation of the statute [Bus. & Prof. Code § 25602] may recover for injuries suffered as a result of that violation." (*Id.,* at p. 157.) However, that question was considered in *Carlisle* v. *Kanaywer,* 24 Cal.App.3d 587 [101 Cal.Rptr. 246], in which the plaintiffs sought damages for the wrongful death of their related decedent from defendant bar owners. The plaintiffs had alleged that decedent was known to the defendants to be " 'a habitual drunkard or an alcoholic' " but that the defendants had served liquor to the decedent in violation of section 25602 until he became intoxicated and violently ill. Decedent died in the bar when he strangled upon inhaling his own vomit. The court stated: ".... *Vesely* points out that one whose negligence 'is a substantial factor in causing an injury, . . . is not relieved of liability because of the intervening act of a third person [the drinker] if such act was reasonably foreseeable at the time of his negligent conduct.' (P. 163.) Thus the seller's negligent act remains an actionable proximate cause, even though the drinker's consumption is a contributing cause. The *Vesely* discussion emphasizes that there may be more than one actionable cause of an injury, and it follows that not every intervening act breaks the chain of causation as to an injured third party. But application of this rule of probable cause does not sustain the right of the injured drinker himself to recover. Rather, if the concurrent negligence of the plaintiff is a proximate contributing cause of his injury, his own recovery is barred by his contributory negligence. It is clear that contributory negligence of the decedent bars recovery by his heirs (*Buckley* v. *Chadwick,* 45 Cal.2d 183,

194-201 [288 P.2d 12, 289 P.2d 242])." (*Id.,* at p. 591; see also, *Sargent* v. *Goldberg,* 25 Cal.App.3d 940, 944 [102 Cal.Rptr. 300].) The *Carlisle* court held that since contributory negligence may be raised by demurrer if its existence appears upon the face of the complaint, the trial court properly sustained the defendants' demurrer to this count of the plaintiffs' complaint. The court rejected the plaintiffs' contention that the decedent could not have been negligent because he allegedly was " 'a habitual drunkard or an alcoholic and had lost the will power to resist the temptation when liquor was offered to him.' "[3]

 Obviously, appellant's complaint in the instant case is no less incriminating of Bruno's conduct than the complaint in *Carlisle* was of that decedent's actions. On the basis of the decision in *Carlisle,* it could be concluded that Bruno's contributory negligence, appearing on the face of the complaint, bars appellant's recovery of damages for his wrongful death.

Another decision which should be considered is *Sargent* v. *Goldberg, supra,* 25 Cal.App.3d 940. In that case the plaintiff alleged that the decedent had entered the defendants' liquor store and purchased an alcoholic beverage and " 'that at the time of purchasing said alcoholic beverage, defendant was in a state approaching drunkenness.' " (*Id.,* at p. 942.) It was further alleged that immediately after the purchase the decedent entered a "public eating place" where the proprietors, in their effort to remove the decedent from the premises, negligently pushed him and

---

[3]The court in *Carlisle* concluded:

". . . . The theory obviously is that an act must be wholly volitional if it is to constitute negligence.

"Adoption of such a rule, however, would have broad and socially undesirable consequences. The compulsive drinker—whether because he could not initially resist liquor or because he drank to the point where his resistance disappeared—would be freed from the standard of the reasonable man. The rule logically should apply to a defendant as well as to a plaintiff, with resulting immunity to the drunken driver who wreaks havoc on the highways, provided only that he could show a 'compulsion' to take the drink which caused his intoxication.[2] *Vesely* holds that the purpose of section 25602 is to protect 'members of the general public from injuries to person . . . resulting from the excessive use of intoxicating liquor.' (P. 165.) That purpose would be defeated by the immunity appellants seek for the drinker himself. *Vesely* deals only with the rights of the innocent third party injured by the drinker. In light of the probable consequences of an extension of *Vesely* to negate negligence of the drinker and thus permit recovery from the seller by the drinker, the restraint of the Supreme Court in refusing to determine the drinker's right is readily understandable. In light of that purposeful restraint, it hardly befits a lower court to expand the rule in this new and potentially dangerous field." (Fns. omitted; *id.,* at pp. 591-592.)

caused him "to fall to the ground and strike his head." He later died as a result of this injury. The trial court sustained the defendants' demurrer to the plaintiff's amended complaint without leave to amend. On appeal, the court upheld this action on the basis of, *inter alia,* the decedent's contributory negligence.[4] (*Id.,* at p. 944.)

Despite these decisions apparently barring appellant's recovery, it must also be determined whether any additional causes of action were stated by appellant against the Lodge or whether there are any limitations on concluding that Bruno was contributorily negligent as a matter of law.

Although the court in *Carlisle* rejected the plaintiffs' contentions relative to contributory negligence, it did recognize another cause of action stated in the plaintiffs' complaint:

"Appellant's second cause of action alleges that respondents, having negligently served liquor to appellants' decedent, failed to render him aid when he became sick, unconscious, and helpless upon their premises as a result of his intoxication. It is well settled that one whose negligence injures another is bound to render him aid, and that the injured party's contributory negligence in causing the injury is not a defense in such a case (*Brooks* v. *E. J. Willig Truck Transp. Co.,* 40 Cal.2d 669, 678-679 [255 P.2d 802]; *Summers* v. *Dominguez,* 29 Cal.App.2d 308, 313 [84 P.2d 237]).

"Since *Vesely* holds that respondents' acts could be a proximate cause of the death, and *since contributory negligence is not here a bar,* it follows that the demurrer to the second count should have been overruled." (Italics added; *id.,* at p. 592.)

Though not so delineated, we see in *Carlisle* the recognition of a new act of negligence alleged by the plaintiffs or, at the least, strong adherence to the doctrine of last clear chance. Although not set out as a separate cause of action, in one of the paragraphs included in appellant's third cause of action, she states:

---

[4]The court also found that the plaintiff had failed to allege in her complaint facts from which it could be inferred that a violation of Business and Professions Code section 25602 existed or that a violation, if it existed, proximately caused the death. (*Sargent* v. *Goldberg, supra,* 25 Cal.App.3d 940, 943-944.)

"Said defendant LODGE, after negligently putting decedent in a sick, helpless, intoxicated condition, and knowing that he was unable to care for himself, failed to render aid to decedent to relieve such helpless condition, and such failure to render aid was a proximate cause of decedent's death."

Although the rule that pleadings are to be liberally construed in favor of the pleader must also be considered (3 Witkin, Cal. Procedure (2d ed.) Pleading, § 330, at p. 1999), the injury or death here alleged fails to come within the permitted cause of action in *Carlisle,* for the injury occurred out of the presence and without the knowledge of the Lodge.

This then brings us to a direct consideration of last clear chance. In her opening brief, appellant asserts that the trial court did not consider that certain of her allegations set forth "a 'last clear chance' formula." Before these allegations can be examined, the permissibility of asserting this theory, given the particular facts before us, must be decided. ■ The doctrine of last clear chance has been described as follows:

"The doctrine of 'last clear chance,' followed in a majority of jurisdictions, is an exception to the defense of contributory negligence. It allows recovery, in spite of the plaintiff's negligence, *if the defendant had the last clear chance to avoid the injury. . . .*

"The conventional legal explanation of this substantial limitation of the contributory negligence defense is that the defendant's immediate negligence is the proximate cause and the plaintiff's earlier negligence is only a remote cause. [Citations.]" (4 Witkin, Summary of Cal. Law (8th ed.) Torts, § 714, pp. 3002-3003; italics original.)

Despite this general use of the theory of last clear chance, its application to a situation where a vendee is sold or served alcoholic beverages by a vendor and thereafter injures himself has yet to be decided. In this respect, however, the following footnote from Keenan, *Liquor Law Liability in California,* 14 Santa Clara Law. 46, 80, fn. 160, which deals with the opinion in *Carlisle* v. *Kanaywer, supra,* is of assistance: "For a suggestion that an intoxicated vendee's contributory negligence could be rebutted by a last clear chance analysis, *see* Galvin v. Jennings, 289 F.2d 15 (3d Cir. 1961). Whether such an approach is possible in California is an open question. The first of the three elements of the doctrine as applied in this state requires the plaintiff to be 'in a position of danger from which he cannot escape by the exercise of

ordinary care . . . not only where it is physically impossible for him to escape, but also in cases where he is totally unaware of his danger . . . .' [Citation.] Thus, the applicability of the doctrine might be made to depend on the proximity of the plaintiff's injury to the defendant's awareness of it. It is doubtful that plaintiff's inebriation *alone* would be sufficient to qualify as a 'position of danger.' However, in aggravated circumstances in which, for example, a defendant puts an inebriated plaintiff behind the wheel of an auto, there seems to be no sound reason to avoid application of the doctrine." (Italics original.)

Although the author of the preceding passage accurately relates the theory of last clear chance to proximate cause (see 4 Witkin, Summary of Cal. Law (8th ed.) Torts, § 714 at p. 3003, *supra*), his example does not appear to be one clearly illustrating that theory. Rather, in such "aggravated circumstances" as those described, the defendant would seem to have acted willfully and wantonly with respect to any injuries which the plaintiff sustained, and under such circumstances, the defense of contributory negligence would not apply. (See *Galvin v. Jennings, infra.*)

In *Galvin v. Jennings* (3d Cir. 1961) 289 F.2d 15, cited in the Keenan article, the plaintiff, a patron, brought an action against a tavern owner for injuries allegedly received in an automobile accident which occurred while the plaintiff was intoxicated. The plaintiff alleged that he was served alcoholic beverages at the tavern even after he was noticeably intoxicated and that " '[u]pon leaving the defendant's tavern, plaintiff was able neither to walk nor to drive properly, and, indeed, was so inebriated that it was necessary for defendant Jennings to come outside and give plaintiff specific and extensive instructions as to which way to turn his steering wheel in order that plaintiff might drive his car from defendant's parking lot.' " (*Id.,* at p. 16.) In dealing with the issue of whether the plaintiff was barred as a matter of law by his own contributory negligence, the court discussed the doctrine of last clear chance and the fact that the situation before it fell within the framework of that doctrine (referred to in the state involved as "proximate cause"). The court concluded that "[w]e think what has been said is enough to dispose of the contributory negligence phase of the case . . . ." (*Id.,* at pp. 18-19.)

However, the court in *Galvin* also seemed to base its holding that the complaint sufficiently stated a cause of action on the finding that the statute involved was designed to protect "an incompetent against the

consequence of his incompetency" and that, as a result, violation of the statutory standard "by a defendant resulting in injury to a plaintiff is not to be defended on the basis of the plaintiff's contributory negligence." (*Id.,* at p. 19.) Further, the court found that "[i]t [was] not at all unlikely that a trier of the fact could find the action of this defendant in helping a man with a morning-acquired state of intoxication into a car and sending him out on a public highway might well be considered reckless and wanton conduct on the defendant's part." (*Id.*) As pointed out by the court, "if a defendant's conduct is wanton and willful the contributory negligence rule does not apply." (*Id.*)

We therefore conclude on the basis of the pleadings that the doctrine of last clear chance is not applicable in the present case. The elements required to show the existence of that theory have been summarized as follows: "The formula, as reiterated in the recent cases in three numbered subdivisions, reads as follows: '(1) That plaintiff has been negligent and, as a result thereof, is in a position of danger from which he cannot escape by the exercise of ordinary care; and this includes not only where it is physically impossible for him to escape, but also in cases where he is totally unaware of his danger and for that reason unable to escape; (2) that defendant has knowledge that the plaintiff is in such a situation, and knows, or in the exercise of ordinary care should know, that plaintiff cannot escape from such situation; and (3) has the last clear chance to avoid the accident by exercising ordinary care, and fails to exercise the same, and the accident results thereby, and plaintiff is injured as the proximate result of such failure.' (*Doran* v. *City & County of San Francisco, supra,* 44 Cal.2d 477, 483; *Daniels* v. *City & County of San Francisco, supra,* 40 Cal.2d 614, 619.)" (*Brandelius* v. *City & County of S. F.,* 47 Cal.2d 729, 740.)

The fact that the Lodge had no knowledge of the actual danger to Bruno is clearly discernible from the allegations before us. In her complaint, appellant alleges that:

"21. The defendant LODGE, and DOES VI and VII, and each of them, were negligent in that they knew, or should have known, that decedent was a person incapable of exercising the same degree of volitional control over his consumption of alcoholic beverages as a normal person; that decedent was at all times herein mentioned incapable of voluntary action in limiting his consumption of alcoholic beverages; and that said serving excessive alcoholic beverages to a person incapable of exercising volitional control over his consumption of alcoholic beverages where

they knew said decedent was to walk to his motor vehicle and drive a motor vehicle in an intoxicated, sick and helpless condition and thereby expose himself to probable and unreasonable risk of harm, including death, was negligent.

"22. Said defendant LODGE, after negligently putting decedent in a sick, helpless, intoxicated condition, and knowing that he was unable to care for himself, failed to render aid to decedent to relieve such helpless condition, and such failure to render aid was a proximate cause of decedent's death." The negligence of respondent was alleged to be the serving of excessive amounts of alcoholic beverages to Bruno. The contributory negligence of Bruno was then his intake of the excessive amounts of alcohol, and respondent's negligence and Bruno's contributory negligence continued to the point of injury. The negligence which would give rise to the doctrine of last clear chance, however, would be the failure of respondent to extricate Bruno after the combined negligence of the Lodge and Bruno placed Bruno in the position as of the time of injury. This (last clear chance) presupposes that the Lodge's immediate negligence is the proximate cause and that Bruno's "earlier negligence is only a remote cause." (4 Witkin, Summary of Cal. Law (8th ed.) Torts, § 714, p. 3003.) As is readily apparent, the negligence of both Lodge and Bruno was coexistent in time; hence, neither was a more "remote cause."

"Under the California formula [of last clear chance] . . ., the defendant must *know* 'that plaintiff was in a position of danger.' . . . Mere negligent failure to observe the situation or to discover the plaintiff does not call for its application." (4 Witkin, Summary of Cal. Law (8th ed.) Torts, § 718 at pp. 3006-3007; italics original.) Further, "[i]t is necessary that the defendant have more than the 'last possible chance.' He must have the last 'clear' chance to avoid the accident; i.e., there must be sufficient *time* to take effective steps to avoid it." (*Id.,* § 721, at p. 3009; italics original.) In *Doran* v. *City & County of San Francisco,* 44 Cal.2d 477, 488 [283 P.2d 1], the California Supreme Court emphasized this aspect of last clear chance when it stated: "It must be not only a *last* chance but a *clear* chance, following actual knowledge of plaintiff's helplessness, to avoid the accident by the exercise of ordinary care; and, by its very terms, the doctrine excludes from its application any case in which plaintiff's state of helplessness, resulting from his own negligence, is created so nearly simultaneously with the happening of the accident that neither party may be fairly said to have thereafter a last clear chance to avoid the accident."

The pleadings in the instant case demonstrate that the Lodge did not know of Bruno's helpless peril which was created by his being intoxicated. Further, since Bruno's helplessness and the accident occurred "so nearly simultaneously," the Lodge was not in a position to have reversed the stream of events so as to alter the current flowing to the impact and to prevent the accident. Respondent just had no *last clear chance.*

Finally, we reach the principle of assumption of the risk. We are left with the question of the applicability of the decision in *Cooper* v. *National Railroad Passenger Corp.,* 45 Cal.App.3d 389 [119 Cal.Rptr. 541] (filed Feb. 18, 1975). In that case, the plaintiff, a passenger on the defendants' railroad, alleged that the defendants were liable for her injuries because of their negligence in "serving her intoxicating beverages when she was already intoxicated, thereby causing her to become more intoxicated and less able to care for her own safety; . . . ." (*Id.,* at p. 393.) However, the court held as follows: "The first specification of negligence does not support a cause of action. We arrive at this conclusion by each of several different routes. First, it has been said that the drinking of alcoholic beverages and not their serving is the proximate cause of any injury that results to the drinker from his own intoxication. (*Cole* v. *Rush,* 45 Cal.2d 345, 351 [289 P.2d 450, 54 A.L.R.2d 1137]; *Hitson* v. *Dwyer,* 61 Cal.App.2d 803, 808-809 [143 P.2d 952].) Second, it is also said that even though the server is negligent and in violation of law by continuing to serve alcoholic beverages to an obviously intoxicated drinker, the drinker's cause of action is barred by his own contributory negligence (*Cole* v. *Rush, supra,* p. 356), or, we think more precisely, by his voluntary assumption of the known and conspicuous risks incident to the consumption of alcoholic beverages in bars. (*McNally* v. *Addis* (1970) 65 Misc.2d 204 [317 N.Y.S.2d 157, 180]; see *Collier* v. *Stamatis* (1945) 63 Ariz. 285 [162 P.2d 125, 127-128].) One of these known and conspicuous risks is the possibility that the bartender will negligently fail to recognize the drinker's obviously intoxicated condition. Thus, when a drinker occupies a stool at the bar, he implicitly acknowledges the possibility that the bartender may negligently continue to serve him alcoholic beverages even though he has become intoxicated and accident-prone as a result of his condition. (See Rest.2d Torts, § 496 F.)[2] . . ." (Fns. omitted; *id.,* at pp. 393-394.)[5]

---

[5]The court further stated: ". . . . Third, we note that while the bartender who serves alcoholic beverages to an obviously intoxicated patron is violating the criminal law (Bus. & Prof. Code, § 25602) the patron is likewise violating the criminal law by being drunk in a public place (Pen. Code, § 647, subd. (f)). We have here a classic instance of parties

In a footnote to this portion of its opinion, the court had stated: "Because we view the drinker's conduct as a voluntary assumption of the risk, we do not reach the question of the viability of the traditional doctrine of contributory negligence, a question now before the Supreme Court in *Li* v. *Yellow Cab Company*, L.A. No. 30277." (*Id.,* at p. 394, fn. 2.) However, the *Li* decision had a broader coverage than that forecast by *Cooper* since the Supreme Court held that "the adoption of a system of comparative negligence should entail the merger of the defense of assumption of risk into the general scheme of assessment of liability in proportion to fault in those particular cases in which the form of assumption of risk involved is not more than a variant of contributory negligence." (*Li* v. *Yellow Cab Co.,* 13 Cal.3d 804, 825.) Nevertheless, since *Li* is inapplicable in the present case, its coverage is not to be considered. Further, the assumption of risk discussed in *Cooper* does not appear to be of the type which is a "variant of contributory negligence"; this latter type exists when a plaintiff unreasonably undertakes to encounter a specific known risk created by a defendant's negligence. (4 Witkin, Summary of Cal. Law (8th ed.) Torts, § 723, at pp. 3013-3014.)

If the language of *Cooper* were applied in the instant case, it might serve as a bar to the action by Venzor. However, the allegation that "decedent" [Bruno] was a person "incapable of exercising the same degree of volitional control over his consumption of alcoholic beverages as a normal person" might refute the requirement that the risk be voluntarily undertaken. (*Id.,* at §§ 722, 723, at pp. 3011, 3013-3014.) This would not, however, substitute for the necessary allegations imposing foreseeability of the source from which injury was to occur.

---

*in pari delicto,* or equal criminal fault, and in their relationship to one another the law normally leaves the parties in the condition it finds them.

"We think each of the foregoing expressions of law reflects the basic view of society that self-police provides the primary defense against the evils of intoxication and outside police plays only a secondary role. A failure of primary policing is not excused or condoned by a failure of secondary policing, and the person with primary responsibility has no recourse for losses against one who is only secondarily responsible. This for the reason put forth by the Supreme Court of Connecticut in *Nolan* v. *Morelli* (1967) 154 Conn. 432 [226 A.2d 383, 387]: 'To recompense in damages an injury to an intoxicated person or his property resulting from his own overindulgence in intoxicating liquor might, quite properly, be felt by the General Assembly to encourage, rather than to discourage, such overindulgence.' Although *Vesely* v. *Sager*, 5 Cal.3d 153 [95 Cal.Rptr. 623, 486 P.2d 161], holds that a third person has a cause of action against the server for violation of the statutory duty not to furnish alcoholic beverages to an obviously intoxicated person, contrary to plaintiff's assertion the ruling does not alter the existing rule of nonliability of server to drinker. (*Sargent* v. *Goldberg*, 25 Cal.App.3d 940, 943 [102 Cal.Rptr. 300]; *Carlisle* v. *Kanaywer*, 24 Cal.App.3d 587, 591 [101 Cal.Rptr. 246].) Plaintiff, therefore, bears the responsibility for injuries to her person resulting from her own intoxication, and she may not shift that responsibility to another." (*Id.,* at p. 394.)

■ Finally, there is the question of whether or not any higher degree of care was owed by the Lodge to Bruno than would have been required of any other person or tavern owner. Although the Lodge might restrict its serving of alcoholic beverages to its members, such circumstance alone, if it in fact existed, is not a reason to require the Lodge to be its "brother's" keeper or to impose on the Lodge a duty of care higher than that imposed on the ordinary dispenser of alcoholic beverages.

The judgment is affirmed.

Ashby, J., and Hastings, J., concurred.

A petition for a rehearing was denied April 6, 1976, and appellant's petition for a hearing by the Supreme Court was denied May 6, 1976.