266

[S. F. No. 21286. In Bank. Aug. 6, 1963.]

JOHN VIERRA, Plaintiff and Appellant, v. FIFTH AVE-
NUE RENTAL SERVICE et al., Defendants and Re-
spondents.

Boccardo, Blum, Lull, Niland & Teerlink and Edward J. Niland for Plaintiff and Appellant.

Walcom & Harmon, Leo J. Walcom, Ropers, Majeski & Phelps and Cyril Viadro for Defendants and Respondents.

PETERS, J.—The basic question involved in this case is whether the trial court was justified, under the facts, in instructing on the doctrine of assumption of risk. We have concluded that it was error, serious and prejudicial, and therefore reversible, to have instructed on this doctrine.

Plaintiff Vierra operates a bar and restaurant in a building leased from defendant Berkley. Berkley operated the tools that caused the injury to plaintiff. Defendant Fifth Avenue Rental Service was the renter of the tools involved in the accident.

At the time the lease for the bar and restaurant was entered into, Berkley, the landlord, who is also a contractor, promised to cut a door through one of the inside walls of the leased premises. Several months later Berkley undertook to perform this promise. He did the work during the day while the bar and restaurant were open for business, and while Vierra and a waitress were on the premises. He did not possess all of the proper tools to perform the work. He requested Vierra to go to the Fifth Avenue Rental Service to rent a sledge hammer, a chisel, and a gad. A gad is an instrument made of steel that is, in effect, a cement drill, used to drill holes in concrete when driven by a sledge hammer. Plaintiff rented these three tools from Fifth Avenue, and delivered them to Berkley. The latter then undertook to cut the door through the wall in question.

Berkley first cut out the plaster and wooden supports in the area of the proposed door. This exposed a tapered concrete footing, about 14 to 18 inches in height, along the bot-

tom of the proposed doorway that had to be removed. This footing was solid concrete lined with steel bars. Berkley attempted to remove the concrete footing in three separate and distinct steps. First, he scored the concrete, by chipping it with an ordinary hammer and the rented chisel, in vertical lines to weaken the concrete shell so that it would break in the right places. Then he located and cut the steel bars in the concrete with a hacksaw. Then he started to drill holes in the concrete with the gad and the sledge hammer to weaken the portion to be removed.

During the scoring process, bits of concrete were flying about, the uncontradicted evidence being to the effect that such concrete did not fly around for more than 6 or 7 feet from where Berkley was working. During this process, Berkley warned the plaintiff and his waitress to stand back from the working area. Admittedly the plaintiff and the waitress heeded this warning. The evidence is uncontradicted that neither approached the area where Berkley was working during the scoring process, which took several hours. During the second stage of the operation—the sawing of the steel bars—there were, of course, no bits of concrete flying about. This is equally true about the third phase of the operation, when Berkley began to use the gad and the sledge hammer. The gad, in effect, drills holes in the cement, thus weakening the structure. When the gad is held on the concrete and hit with the sledge hammer it reduces the cement at the point of impact to powder. It is true that plaintiff in his deposition, plaintiff being a foreigner who has difficulty in expressing himself, stated, in answer to the question ''Did you see pieces of concrete and so forth flying about,'' ''yes,'' and that such answer apparently referred to the time when he was injured. A reading of the whole transcript demonstrates to a certainty that plaintiff must have been confused when he gave this answer. All of the other evidence, including all of the evidence produced by the defendants, demonstrates that this answer must have referred to the stage of construction when Berkley was scoring the concrete. Berkley, the contractor and expert, was positive that while he was using the gad no cement particles were flying about, that he apprehended no danger at all to anyone from this operation, and that he did not warn plaintiff of any danger while he was using the gad. In fact, he testified that at the time of the accident the gad was inserted 2 or 3 inches into the concrete, that it could stay there without help, and that he was hitting the top of the

gad with the sledge hammer held in both hands.

After Berkley had been using the gad and sledge hammer for about two hours, plaintiff approached the general area where Berkley was working to pick up some empty bottles. When some distance from Berkley, plaintiff was struck in the eye by a flying particle of metal, which had apparently broken off from the top of the gad. As a result of this accident plaintiff had to have his eye removed, and he now has a false eye.

There is a conflict in the evidence as to how far apart Berkley and Vierra were when the plaintiff was hit. In his deposition, plaintiff testified that he estimated the distance between him and Berkley at about 9 feet. Berkley testified that he believed plaintiff ''was between 10 and 15 feet'' away at the time of the accident. Both were agreed as to the place in the room where each was located when the accident occurred. At the trial, plaintiff testified that, just before he was called as a witness, he had gone to the restaurant and for the first time actually measured the distance between the two spots where the two participants were admittedly located, and ''I know it is 14 feet exactly.'' This apparent conflict between estimates, and uncontradicted evidence of a precise measurement, need not here be resolved. On this appeal it may be assumed that plaintiff is bound by his estimate that he was but 9 feet from Berkley when he was hit by the particle of steel.

Before the accident, Berkley had not examined the gad, and while using it he did not pay particular attention to it. On the day following the accident he made a detailed examination, and discovered that there was a chip out of the center of, and other indentations in, the head of the gad. The chip was out of the center of the head, and the piece of steel removed from plaintiff's eye conformed generally in size and shape to the missing piece from the head of the gad. No pieces of steel were missing from the sledge hammer. There is evidence from which it can be inferred that, had the gad been properly machined, tempered, and inspected by defendant Fifth Avenue, such chipping and flattening of the gad would not have occurred. This evidence would have supported a finding that Fifth Avenue was guilty of negligence.

Several days after the accident the rented tools were returned to the defendant Fifth Avenue. Subsequently, after Berkley learned that plaintiff had been hit by a piece of steel and had observed the particle at the hospital, he visited

Fifth Avenue on two occasions in an attempt to obtain the gad in question. On his first visit, he told one of the clerks that he wanted to buy the gad that had been rented. At that time he saw three gads in the appropriate bin where they were stored, and observed that one of them, of the size and shape of the one he had rented, had a piece missing from its head. He did not secure the gad that day. He returned the next day. The clerk then informed him that he could not release the gad because the manager of the company had told him not to release it until the manager secured the approval of the company's attorney. The manager came out during this conversation and told Berkley his attorney had given him permission to release the gad. The manager then handed Berkley a gad that was lying on the counter, and Berkley purchased it. When he examined it he observed that the head had been machined and ground down smooth. The hole he had observed the day before was no longer present. He could not tell, of course, whether this was or was not the gad involved in the accident. There was considerable testimony to the effect that when the heads of gads are mushroomed, flattened or chipped by use, they are machined or ground, and tempered.

Plaintiff brought this action against Fifth Avenue and against Berkley. The theory of the complaint so far as Fifth Avenue is concerned, was that the gad was defective; so far as Berkley is concerned, that it was used improperly; or both. The jury brought in verdicts in favor of the defendants. Plaintiff moved for a new trial. The trial court denied the motion as to Fifth Avenue, but granted it as to Berkley, on the ground of insufficiency of the evidence. This order was not made until after the trial court's jurisdiction, as a matter of law, had expired. As a result, the motion for a new trial was denied as to Fifth Avenue by the court, and as to Berkley by operation of law.

As indicated, the basic question presented on this appeal is whether the trial court properly gave several instructions proposed by defendants on the doctrine of assumption of risk. No question is raised as to the form of those instructions. In our opinion those instructions should not have been given, and the giving of them constituted prejudicial error.

■ The doctrine of assumption of risk is, of course, an affirmative and limited defense. It applies only when the accident arises from a danger known to the victim before the accident, and where the evidence shows that the victim vol-

untarily chose to enter or to remain in the zone of known danger. Actual, and not merely constructive, knowledge of the danger is required. ■ The doctrine is to be distinguished from contributory negligence (see Note 82 A.L.R.2d 1218), although the two may arise from the same set of facts and frequently overlap. But the two doctrines are essentially different. Contributory negligence arises when the plaintiff fails to exercise due care. Assumption of risk arises regardless of the degree of care used. It is based, fundamentally, on consent. Contributory negligence is not.

■ To warrant the application of the doctrine the evidence must show that the victim appreciated the specific danger involved. He does not assume any risk he does not know or appreciate. (See generally 35 Cal.Jur.2d, Negligence, § 266, p. 814 et seq.) Stated another way, before the doctrine is applicable, the victim must have not only general knowledge of a danger, but must have knowledge of the particular danger, that is, knowledge of the magnitude of the risk involved.

The leading authority in this field, Dean William Prosser, in his book on Torts (2d ed. 1955) page 303, states the rule as follows: "The defense of assumption of risk rests upon the plaintiff's consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of harm from *a particular risk.*" (Italics added.) The rationale of the doctrine is explained by Prosser thusly: " 'Knowledge of the risk is the watchword of assumption of risk.' Ordinarily the plaintiff will not be taken to assume any risk of conditions or activities of which he is ignorant. Furthermore, he must not only know of the facts which create the danger, but he must comprehend and appreciate the danger itself. . . . If because of age, or lack of information or experience, he does not comprehend the risk involved in a known situation, he will not be taken to consent to assume it. His failure to exercise ordinary care to discover the danger is not properly a matter of assumption of risk, but of the defense of contributory negligence." (P. 309.)

This doctrine has frequently been stated and applied by the California courts. In *Saeter* v. *Harley Davidson Motor Co.*, 186 Cal.App.2d 248, 255-256 [8 Cal.Rptr. 747], it is pointed out that before the doctrine is applicable the victim must have "appreciation of the danger," and that such requirement is independent of the requirement of actual general knowledge of a danger. In other words, actual knowl-

edge of a danger is not interchangeable with appreciation of the risk.

In *Prescott* v. *Ralphs Grocery Co.*, 42 Cal.2d 158 [265 P.2d 904], where the plaintiff slipped on a wet spot on defendant's sidewalk and was injured, the court stated (pp. 161-162): "It [assumption of risk] is available when there has been a voluntary acceptance of a risk and such acceptance, whether express or implied, has been made with knowledge and appreciation of the risk. (See Rest., Torts, § 893.)

". . . As we have seen, the elements of the defense of assumption of risk are a person's knowledge and appreciation of the danger involved and his voluntary acceptance of the risk." (See also *Hayes* v. *Richfield Oil Corp.*, 38 Cal.2d 375 [240 P.2d 580]; *Hawk* v. *City of Newport Beach*, 46 Cal.2d 213 [293 P.2d 48]; *Hall* v. *Macco Corp.*, 198 Cal.App.2d 415, 425 [18 Cal.Rptr. 273]; *Bilyeu* v. *Standard Freight Lines*, 182 Cal.App.2d 536, 545 [6 Cal.Rptr. 65], where the same general words are used.)

A couple of quotations from the many cases stating the rule will further illustrate its application. In *Alvarado* v. *Anderson*, 175 Cal.App.2d 166, 176 [346 P.2d 73], it was stated: "In addition to knowledge of the condition creating the risk which it is claimed is assumed, an 'appreciation of the magnitude of that risk' is a vital element of the defense. . . ."

In *Dutcher* v. *City of Santa Rosa High School Dist.*, 137 Cal.App.2d 481, 484 [290 P.2d 316, 291 P.2d 557], the rule is stated as follows: ". . . if the defense is to be submitted to a jury the jury must be told clearly that the doctrine has no application unless there was knowledge, express or implied, of the existence of the risk, together with an appreciation of the extent of the danger."

This doctrine has been applied in many different factual situations by the California courts. In *Bee* v. *Tungstar Corp.*, 65 Cal.App.2d 729 [151 P.2d 537], it was held that an invitee who knew of the general danger in riding in a bucket of the mine owner's aerial tramway, did not assume the risk, of which he had no specific knowledge, that the traction cable was improperly spliced.

In *Rogers* v. *Los Angeles Transit Lines*, 45 Cal.2d 414 [289 P.2d 226], a passenger on a bus rested his elbow on the sill of an open window so that the elbow protruded. The elbow was struck by the open door of a truck negligently parked. This court rejected the claim that the doctrine of assumption

of risk was applicable because there was no evidence that plaintiff had actual knowledge of the danger from an improperly parked truck. It was pointed out that the plaintiff was not required to anticipate that the bus driver and truck owner would be negligent. "Plaintiff could not have assumed the risk at all unless he actually saw that the door of the Langendorf truck was open some time before it struck his elbow and also knew that the bus was being driven too close to it." (P. 419.)

There are several cases specifically holding that it is error to instruct on the doctrine if evidence of assumption of the specific danger involved is not present.

In *Guerrero* v. *Westgate Lumber Co.*, 164 Cal.App.2d 612 [331 P.2d 107], the plaintiff was struck by a falling log while loading a truck. It was held to be prejudicial error to instruct on the doctrine where there was evidence that plaintiff had general knowledge of the danger but there was no evidence that he knew of or apprehended any danger from the log that fell. At page 618 it was stated: "Actual knowledge of the existence of a specific danger is an essential and indispensable element of the defense of assumption of risk."

In *Hidden* v. *Malinoff*, 174 Cal.App.2d 845 [345 P.2d 499], the decedent stepped out of his car onto the traveled portion of a main highway in the nighttime. Traffic was heavy and he was warned by his wife not to open the hood of the car which opened from the side towards the traffic. Plaintiff alighted from the car, turned his back to oncoming traffic and was hit by defendant's negligently operated car. Obviously plaintiff must have known that it was dangerous to do what he did, and the appellate court so held. But it also held that it was prejudicial error to instruct on assumption of risk because there was no evidence that plaintiff knew of the actual risk involved, namely the negligent operation of defendant's car.

In *Griffin* v. *Irelan*, 194 Cal.App.2d 844 [15 Cal.Rptr. 306], the plaintiff slipped and fell on a wet platform from which the defendant had removed the rubber mat while he washed the platform. The evidence showed that plaintiff knew the platform was slippery when wet, and that she did not look to see whether the mat was present. The evidence was to the effect that plaintiff did not have actual knowledge that the mat was removed. Under such circumstances it was held prejudicial error to instruct on the doctrine of assumption of

risk because the evidence did not show that plaintiff knew of the particular risk involved. (See also *Garber* v. *Prudential Ins. Co.*, 203 Cal.App.2d 693 [22 Cal.Rptr. 123].)

In the recent case of *Hook* v. *Point Montara Fire etc. Dist.*, 213 Cal.App.2d 96 [28 Cal.Rptr. 560], Judge Molinari held that it was error to instruct on the doctrine where the plaintiff may have known of the general danger of walking into a darkened room, but did not know that the floor level was 9 inches lower than the threshold of the door. The opinion cites many cases holding that actual knowledge of the particular risk and its magnitude are essential and approves that rule. In doing so the court stated (p. 101): "This rule appears to us to be consistent with the theory of assumption of risk. It not only recognizes the element of knowledge, but it takes cognizance of the element of consent as a basis for the doctrine. Accordingly, we are persuaded that before one can consent to assume a risk he must have knowledge of the particular risk to which he is consenting. It is not enough, therefore, in order to urge the defense of assumption of risk, that one assume a risk of injury in the academic sense. . . . In the legal sense, however, assumption of risk presupposes that one has placed himself in a place of *known* danger with knowledge and appreciation of the risk." (See also *Shahinian* v. *McCormick*, 59 Cal.2d 554 [30 Cal.Rptr. 521, 381 P.2d 377].)

Other cases could be cited. It is not necessary to do so. ■ In this state the rule is clearly established that before the jury may be properly instructed on the doctrine there must be evidence not only that the plaintiff knew that he was stepping into a place of danger, but also had actual knowledge of the specific danger involved.

■ That vital element is absent here. The record shows that plaintiff knew that cement particles were flying about for a distance of 6 or 7 feet. He knew of that danger, and had been warned of it. He did not approach Berkley while he was scoring the concrete. He had no knowledge at all of any danger, even from flying concrete, beyond the 7-foot limit, and had no knowledge at all of the danger of flying metal particles caused by a defective gad or by the negligent use of it, or both. Admittedly plaintiff was at least 9 feet from Berkley when he was hurt. Neither he nor Berkley, an experienced contractor, apprehended any danger at that distance, nor did either apprehend any danger from flying steel particles caused by the negligent furnishing or negligent

using of tools. Neither had actual knowledge of any danger from this source. It was a danger separate and distinct from that caused by the flying concrete, and inherently different from it. The flying concrete was caused by chipping the cement. The flying steel particles were caused either by the negligent furnishing of a defective tool or by the negligent operation of that tool, or both. There was no evidence that plaintiff had knowledge of the specific risk involved. It was error to instruct on the doctrine. This case is fundamentally the same as *Hall* v. *Macco Corp., supra,* 198 Cal. App.2d 415, also involving two separate dangers, one known, and one unknown. In that case the denial of assumption of risk instructions was upheld where plaintiff was watching a burning bridge when a gas line under the bridge, of which plaintiff had no knowledge, exploded. Plaintiff knew of the general danger of approaching the burning bridge but not of the specific danger of the gas line. Thus the doctrine was not applicable.

The error in instructing on the doctrine was clearly prejudicial. It cannot be said that in absence of the error a different verdict would not have been probable. While the evidence may be sufficient to warrant instructions on contributory negligence, certainly it cannot be said that such contributive negligence appears as a matter of law. The question of contributory negligence was a question of fact for the jury. But we cannot say that the verdict was based on contributory negligence and that the instructions on assumption of risk were simply surplusage. Under the instructions, the jury could have found no contributory negligence but assumption of risk. That being so the instructions on that doctrine were prejudicial. This requires a reversal as to both defendants.

Plaintiff also attempts to rely on certain safety orders, contending that they were intended to protect persons in the status of plaintiff, and that their violation was the sole cause of the accident. He urges this as an additional reason why the doctrine of assumption of risk is here inapplicable. (*Shahinian* v. *McCormick, supra,* 59 Cal.2d 554; *Finnegan* v. *Royal Realty Co.,* 35 Cal.2d 409, 430 [218 P.2d 17] ; *Guerrero* v. *Westgate Lumber Co., supra,* 164 Cal.App.2d 612, 618.) Plaintiff did not introduce these regulations into evidence, nor did he offer any instructions based upon them. Apparently they were first mentioned, and then only incidentally, on a motion for nonsuit. Inasmuch as the case must be reversed for other reasons, we need not now pass on the

legal effect, if any, of those regulations. On the retrial they will, if pertinent, be properly introduced and their legal effect argued and determined.

The judgment is reversed.

Gibson, C. J., Traynor, J., Schauer, J., Tobriner, J., and Peek, J., concurred.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons expressed by Mr. Justice Devine in the opinion prepared by him for the District Court of Appeal in *Vierra* v. *Fifth Avenue Rental Service* (Cal.App.) 27 Cal.Rptr. 843.