[Civ. No. 49230. Second Dist., Div. Five. Dec. 13, 1977.]

JUAN R. GONZALEZ, Plaintiff and Respondent, v.
FRANCISCO V. GARCIA, Defendant and Appellant.

COUNSEL

Cavalletto, Webster, Mullen & McCaughey, William L. Gordon, Ellis J. Horvitz and Edward J. Horowitz for Defendant and Appellant.

Dunlap, Melville & Iwasko and Gary J. Dunlap for Plaintiff and Respondent.

OPINION

**STEPHENS, J.**—This appeal is taken from a judgment entered upon a jury verdict in favor of plaintiff. The action is one for damages for personal injuries suffered as a result of an automobile accident. The sole issue presented in the appeal is whether the trial court erred in refusing to instruct the jury on the defense of assumption of risk. The case was tried subsequent to *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], wherein the Supreme Court abolished the defense of assumption of risk, insofar as it overlaps with contributory negligence, in favor of the doctrine of comparative negligence. We hold that under the facts of this case, the trial court's refusal was not error.

Plaintiff Juan Gonzalez, defendant Francisco Garcia, Jack Longest and Weldon Roberts were coworkers at a power plant, working the 10

p.m. to 6 a.m. shift. They were in a car pool. On the night before the accident Garcia picked up Gonzalez and drove to a Chevron gas station where he picked up Longest, who had parked his car at the station. They then drove to a Texaco station where Garcia parked his car, and they met Roberts. All of the men rode the rest of the way to work with Roberts.

At 6 a.m. on the day of the accident the four men left work, with Roberts driving, went to nearby Avila Landing and began drinking beer, tequila and other alcoholic beverages. Gonzalez had about three beers; the others had considerably more to drink. It was their custom to stop for a few drinks, but on this particular day they stayed longer and consumed more alcohol than usual.

When they left Avila Landing about 9 a.m., Roberts drove them to the Texaco station. There, Garcia, Gonzalez and Longest got into Garcia's car, Gonzalez fell asleep in the back seat, and Garcia drove to a liquor store. When they reached the liquor store, Gonzalez awoke and said that he wanted to go home. Nevertheless, Garcia and Longest purchased a bottle of tequila, drove to the Chevron station and proceeded to drink the tequila. Again Gonzalez requested to be taken home. At that time Gonzalez also phoned his wife to have her pick him up, but there was no answer.

After the bottle of tequila was emptied, Garcia and Longest decided to go to a bar for another drink, despite Gonzalez' protests. Gonzalez had a glass of beer while Garcia and Longest continued to drink tequila. A disturbance arose at the bar, and the police came to investigate. One officer suggested that since Gonzalez appeared to be the least intoxicated of the three, he should drive the other two home.

Gonzalez then drove Garcia's car to Longest's house and helped Longest inside. When he returned to the car, Garcia was in the driver's seat and insisted on driving. Gonzalez argued with Garcia for a while, then tried to reach his wife again, but was once more unsuccessful. He believed his wife to be with her mother who was ill. He did not want to disturb his mother-in-law, so he did not call there to reach his wife. Gonzalez then went back to the car and tried to convince Garcia to let him drive, but Garcia refused, assuring Gonzalez that he, Garcia, was all right. Finally, Gonzalez got into the passenger's seat. Shortly after leaving Longest's house, Gonzalez fell asleep. Apparently Garcia lost

control of the car and caused it to roll over, landing on its side on the median strip of the freeway.[1]

Gonzalez testified that Garcia's driving seemed all right. Garcia was however unquestionably intoxicated at the time of the accident for a blood alcohol test indicated a .20 blood alcohol content.

Gonzalez suffered a concussion and fracture, which, as of the date of the trial, prevented him from adequately performing his prior trade of high steel painting.

The trial court instructed the jury on comparative negligence but refused defendant's proffered instruction on assumption of risk.[2] The jury returned a verdict in favor of plaintiff with special findings that Garcia was negligent and 80 percent responsible for Gonzalez' injuries and that Gonzalez himself was contributorily negligent and 20 percent responsible.

Appellant contends that while *Li* v. *Yellow Cab Co., supra,* 13 Cal.3d 804, 825, abolished that portion of assumption of risk which is "no more than a variant of contributory negligence," both express and implied assumption of risk are still extant where the plaintiff can be "held to agree to relieve defendant of an obligation of reasonable conduct toward

---

[1] It may have been that Garcia also fell asleep for Gonzalez testified:
"Q. Once he got onto the freeway, you went to sleep pretty fast, didn't you? A. Yes. Q. Did you relax? Did you feel he was driving okay; was that the reason? A. I was watching pretty close and trying to stay awake to see how he was doing. Q. Were you talking to him? A. I don't remember. Q. Were you trying to keep him awake? A. Yes. Q. Did he appear to be sleepy? A. Yes."

[2] Defendant requested that former BAJI No. 4.30, i.e., prior to the 1975 revision, be given as a jury instruction on assumption of risk. That instruction read as follows: "If plaintiff assumed the risk [of harm] from . . . . , he may not recover damages from an injury resulting therefrom. [¶] In order for plaintiff to have assumed such risk, he must have had actual knowledge of the particular danger and an appreciation of the risk involved and the magnitude thereof, and must thereafter have voluntarily assumed such risk. [¶] For a person to act voluntarily he must have freedom of choice. This freedom of choice must come from circumstances that provide him a reasonable opportunity, without violating any legal or moral duty, to safely refuse to expose himself to the danger in question. [¶] In determining whether the plaintiff assumed such risk, you may consider his maturity, intelligence, experience and capacity, along with all the other surrounding circumstances as shown by the evidence."

Additionally, the trial court modified defendant's requested jury instruction No. 11 regarding burden of proof, changing the line "That plaintiff voluntarily assumed the risk of the injuries and damages of which he complained" which was number 3 of the defendant's requested instructions, to read: "the proportion of plaintiff's damages attributable to his own negligence."

him," (*id.,* at p. 824, quoting *Grey* v. *Fibreboard Paper Products Co.* (1966) 65 Cal.2d 240, 245-246 [53 Cal.Rptr. 545, 418 P.2d 153]). Therefore, appellant contends, the trial court should have granted the request to have the jury instructed on the defense of assumption of risk as well as on comparative negligence.

The defense of assumption of risk was a late development in the law of negligence. The elements most frequently cited as essential to find assumption of risk are that the plaintiff have actual knowledge of the specific risk, appreciate the magnitude of the danger and freely and voluntarily encounter it. (*Vierra* v. *Fifth Avenue Rental Service* (1963) 60 Cal.2d 266 [32 Cal.Rptr. 193, 383 P.2d 777]; *Shahinian* v. *McCormick* (1963) 59 Cal.2d 554 [30 Cal.Rptr. 521, 381 P.2d 377].)

Most commentators recognize at least three kinds of assumption of risk: (1) express—where plaintiff, in advance, gives consent to relieve defendant of a legal duty and to take his chances of injury from a known risk; (2) implied—where plaintiff acts reasonably in voluntarily encountering a risk with the knowledge that defendant will not protect him; and (3) implied—where the plaintiff acts unreasonably in voluntarily exposing himself to a risk created by defendant's negligence. (Prosser on Torts (4th ed. 1971) § 68, p. 440; Schwartz, Comparative Negligence (1974) p. 157; Rest.2d Torts § 496 A, com. c; Fleming, *The Supreme Court of California. 1974-1975 Foreword: Comparative Negligence at Last—By Judicial Choice* (1976) 64 Cal.L.Rev. 239, 260; Posner, Reeslund, Williams, *Comparative Negligence in California: Some Legislative Solutions (Part I),* Los Angeles Daily J. Rep. (Aug. 12, 1977).) Others define implied assumption of risk as being divided into primary, where defendant cannot be held negligent because he is under no duty to plaintiff or there has been no breach of duty because plaintiff's conduct has limited the duty owed him by defendant, and secondary, which is used as an affirmative defense to an established breach of duty. (*Meistrich* v. *Casino Arena Attractions, Inc.* (1959) 31 N.J. 44 [155 A.2d 90].)

So long as contributory negligence and assumption of risk were both complete bars to recovery, the distinction between the two was never completely clarified, especially with implied assumption of risk. Usually, if a distinction was made, it was based upon the fact that assumption of risk requires knowledge of the danger and intelligent and deliberate acquiescence, whereas contributory negligence is concerned with fault or departure from the reasonable man standard of conduct, frequently

inadvertently. (*Vierra* v. *Fifth Avenue Rental Service, supra,* 60 Cal.2d 266; *Carr* v. *Pacific Telephone Co.* (1972) 26 Cal.App.3d 537 [103 Cal.Rptr. 120].) Also the standard for determining whether the defense is available is different—assumption of risk using a subjective standard of the particular individual and circumstances and contributory negligence using an objective, reasonably prudent man standard with which to compare plaintiff's conduct. (Prosser, *supra*; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 683, p. 2968; Rest.2d Torts, § 496A; See also *Fonseca* v. *County of Orange* (1972) 28 Cal.App.3d 361 [104 Cal.Rptr. 566]; *Meistrich* v. *Casino Arena Attractions, Inc., supra,* 155 A.2d 90.)

Assumption of risk has been rather unpopular due to the harshness of the "all or nothing" recovery, and there has been considerable effort to abolish it completely, particularly in view of the emergence of the comparative negligence doctrine. (Prosser, *supra*; Schwartz, *supra*; James, *Assumption of Risk: Unhappy Reincarnation* (1968) 78 Yale L.J. 185.) Nevertheless, where the doctrine of comparative negligence has been accepted, there have been three different approaches to assumption of risk—completely abolishing it as a defense, as in the federal Employers' Liability Act (Apr. 22, 1908, ch. 149, § 4, 35 Stat. 66; Aug. 11, 1939, ch. 685, § 1, 53 Stat. 1404, 45 U.S.C.A. 54), as interpreted in *Tiller* v. *Atlantic Coast Line R. Co.* (1943) 318 U.S. 54 [87 L.Ed. 610, 63 S.Ct. 444, 143 A.L.R. 967]; maintaining it as a complete and separate defense, as in *Bugh* v. *Webb* (1959) 231 Ark. 27 [328 S.W.2d 379, 84 A.L.R.2d 444]; or merging it to some extent with contributory negligence, as in *Springrose* v. *Willmore* (1971) 292 Minn. 23 [192 N.W.2d 826]. In those states which have merged the defenses, there has frequently been a complete merger of implied assumption of risk and contributory negligence, with express assumption of risk remaining as a separate defense. (See, e.g., *McConville* v. *State Farm Mutual Automobile Ins. Co.* (1962) 15 Wis.2d 374 [113 N.W.2d 14].) It has been argued rather persuasively that it would be inequitable to allow plaintiff to recover a portion of his damages if his actions in encountering the danger were unreasonable but to bar plaintiff completely if his actions were carefully considered and reasonable, based upon the available alternatives. (Schwartz, Comparative Negligence, *supra*; Schwartz, *Li* v. *Yellow Cab Company: A Survey of California Practice Under Comparative Negligence* (1976) 7 Pacific L.J. 747.) We find this last approach to be the better view and to be the approach most in keeping with the Supreme Court's opinion in *Li.*

Throughout the opinion in *Li* v. *Yellow Cab Co., supra,* 13 Cal.3d 804, the Supreme Court emphasized that the existent contributory negligence

rule must give way to a system "which assesses liability in direct proportion to fault," eliminating the harshness of the "all-or-nothing" doctrine for reasons of logic, practical experience and fundamental fairness. (13 Cal.3d at p. 808.) The court discussed the "all-or-nothing" rule as "inequitable in its operation because it fails to distribute responsibility in proportion to fault" and as contrary to all notions of fairness which require the extent of fault to govern the extent of liability. (*Id.* at pp. 810-811.) The court also noted that juries had been reluctant to apply the contributory negligence rule, compromising instead on some diminution of the damages because of plaintiff's fault. (*Id.* at p. 811.) The court further indicated that its decision was but a first step in a proper and just direction (*id.* at p. 826), which implies that other decisions should follow their lead in developing more equitable doctrines.

Each statement is equally applicable to the doctrine of assumption of risk. Slightly changing the theory behind the "all-or-nothing" recovery rule and calling it assumption of risk does not alter the fact that it is fundamentally unfair for one person to bear the total burden of damages for which two people are by hypothesis responsible.

Appellant emphasizes the language of *Grey* v. *Fibreboard Paper Products Co., supra,* 65 Cal.2d 240, which is quoted in *Li, supra,* 13 Cal.3d 804, at pages 824-825: " '. . . where a plaintiff *unreasonably* [italics in original] undertakes to encounter a specific known risk imposed by a defendant's negligence, plaintiff's conduct, although he may encounter that risk in a prudent manner, is in reality a form of contributory negligence . . . . *Other kinds of situations within the doctrine of assumption of risk are those, for example, where plaintiff is held to agree to relieve defendant of an obligation of reasonable conduct toward him. Such a situation would not involve contributory negligence, but rather a reduction of defendant's duty of care.*' " (Italics added.)

As respondent aptly points out in his brief, *Grey* could equally have been "held to agree to relieve defendant of an obligation of reasonable conduct toward him" as respondent might have been in this case.

Appellant tries to bolster his argument by citing language of this court in *Venzor* v. *Santa Barbara Elks Lodge* (1976) 56 Cal.App.3d 209 [128 Cal.Rptr. 353] and *Cooper* v. *National Railroad Passenger Corp.* (1975) 45 Cal.App.3d 389 [119 Cal.Rptr. 541, 76 A.L.R.3d 1210]. However, in each of those cases, actions were brought against the person serving plaintiffs

the alcoholic beverages, but the damages were caused by plaintiffs' subsequent conduct while being intoxicated. (█ In the instant case defendant's negligent driving was the direct cause of plaintiff's injuries, and plaintiff's only contributing negligence was in riding in the same car. Thus, in this case plaintiff's conduct is of the type which is a variant of contributory negligence which "exists when a plaintiff unreasonably undertakes to encounter a specific known risk created by defendant's negligence." (*Venzor* v. *Santa Barbara Elks Lodge, supra,* 56 Cal.App.3d at p. 223.)

Regardless of the extent of assumption of risk which still exists as a separate defense and complete bar to recovery, in this case plaintiff's conduct clearly falls into the overlapping area, the area of choosing an unreasonable alternative when reasonable ones were available, thereby evidencing a lack of due care for his own safety. Plaintiff had actual knowledge that defendant was intoxicated, he had been advised by a police officer that he should drive, he demonstrated that he probably had knowledge of the risk by his attempts to contact his wife, he had alternatives of remaining at Longest's house or calling a cab and yet he chose to ride with defendant. Where there is a reasonably safe alternative open, the plaintiff's free choice of the more dangerous way is unreasonable and amounts to both contributory negligence and assumption of the risk. (Prosser, *supra,* pp. 451-452.) To that extent the doctrines are merged under *Li, supra,* 13 Cal.3d 804, into the doctrine of comparative negligence.

The facts do not justify even an inference that the acts of plaintiff included an element in addition to negligence such as waiver of duty, agreement, or other element not a variant of contributory negligence.

There was no error in the court's refusal to give the instruction on assumption of risk as requested.

The judgment is affirmed.

Kaus, P. J., and Ashby, J., concurred.