[Civ. No. 6299. Fifth Dist. May 19, 1983.]

FRANCISCO SEGOVIANO, Plaintiff and Appellant, v.
HOUSING AUTHORITY OF STANISLAUS COUNTY,
Defendant and Respondent.

## COUNSEL

Canelo, Hansen & Wilson, Ronald W. Hansen and Robert Prentiss for Plaintiff and Appellant.

Stumbos & Mason and Thomas D. Nielsen for Defendant and Respondent.

## OPINION

## FRANSON, Acting P. J.—

### INTRODUCTION

This appeal presents the question of what part, if any, the defense of *reasonable* implied assumption of the risk (RIAR) plays in our comparative fault system today. RIAR exists when a plaintiff acts reasonably in voluntarily encountering a known risk of injury. It is to be contrasted with another form of implied assumption of risk—where a plaintiff acts unreasonably in confronting a known risk of injury. There is, of course, a third type of assumption of the risk, express, when plaintiff; in advance, orally or in writing, consents to relieve the defendant of a legal duty and to take his or her chances of injury from the known risk. (*Gonzalez* v. *Garcia* (1977) 75 Cal.App.3d 874, 878 [142 Cal.Rptr. 503]; Prosser, Torts (4th ed. 1971) § 68, p. 440; Rest.2d Torts, § 496A, coms. c, d; Schwartz, Comparative Negligence (1974) p. 157.)

 We hold that RIAR plays no part in the comparative negligence system of California; it is neither a bar to plaintiff's recovery on the theory that it forecloses the existence of a duty of care by the defendant toward the plaintiff nor is it a partial defense justifying allocation of a portion of the fault for the accident to the plaintiff on the theory that he or she was contributorily negligent in confronting the risk. It is only when the defendant proves that the plaintiff's decision to participate in the activity was *unreasonable* that a jury may allocate damages between the plaintiff and the defendant. Such an allocation is permissible because the defendant has proved that the plaintiff was negligent. Whether the plaintiff's decision to expose himself or herself to the risk of injury was unreasonable under all of the circumstances will be a question for the jury unless it can be held as a matter of law that the decision was reasonable.

### THE CASE BELOW

This is a personal injury action. The jury returned a verdict in favor of the plaintiff assessing him 30 percent fault and assessing 70 percent fault to the

defendant. Plaintiff appeals contending the jury wrongly allocated a portion of the fault to him. He also challenges the trial court's denial of his motion for a new trial based on inadequate damages.

Plaintiff separated his left shoulder while playing in a flag football game sponsored by defendant Stanislaus County Housing Authority. The game was organized by Jose Santana, recreational coordinator for defendant.

The players were provided belts with two plastic snap-on flags. Under the rules, an offensive player's progress could only be stopped by pulling one of the flags. Players also were prohibited from pushing, holding or otherwise using their hands. The reason for the rules was to avoid injury to the participants.

During the game, plaintiff was running along the sidelines attempting to score a touchdown when Santana, who was playing on the opposite team, pushed him out of bounds by pushing the back of his shoulders. Plaintiff fell and seriously injured his left shoulder.

Over his objection, plaintiff was cross-examined by the defendant about his experience in playing flag football and his knowledge of the rules of the game. Plaintiff indicated from his prior experience that he knew that some physical contact was involved and that occasionally people fell down during the game. He was also aware that during blocking, some pushing might be involved. Finally, plaintiff was asked, "Did you also know in November of 1975 that as a result of the various activities I have just listed [blocking, collisions while running, etc.] . . . that injuries sometimes might result because of these different types of conduct?" Plaintiff replied, "Yes."

Plaintiff made a motion *in limine* to exclude any "assumption of the risk" type evidence, and during trial he objected to such evidence. Plaintiff also made a motion for a directed verdict on the issue of his negligence. The basis for these motions and objections was that the evidence was uncontradicted that all plaintiff agreed to do was to participate in a game of flag football and to advance the ball as an offensive player. The mere fact he had knowledge that players would violate the rules at times by pushing with their hands when blocking and that a player could fall during the course of the game and sustain injury was not a basis for assessing any fault to him.

Interpreting *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], the trial court ruled that although the defendant had pleaded the defense of assumption of risk, it was "assumed" (subsumed) within the defense of contributory negligence. The court denied plaintiff's motion for a directed verdict and said it would instruct on comparative negligence, but it would not permit any reference by defense counsel to assumption of risk.

The jury returned a verdict after it had requested the trial court to reread the instructions on negligence. The jury found that Jose Santana was negligent and that his negligence was a legal cause of plaintiff's injury. The jury further found that plaintiff was also negligent in playing the game and that his negligence contributed as a legal cause to his injury.

The medical bills incurred as a result of the accident were stipulated to be $2,292.84. Plaintiff also sustained $381 in lost earnings. The jury awarded plaintiff total damages of $4,000 but since the plaintiff was found 30 percent at fault, he was awarded a net amount of $2,800.

## DISCUSSION

Plaintiff contends it was prejudicial error for the trial court to instruct on contributory negligence since the record is devoid of any evidence that he was negligent either in his conduct during the game or in his decision to participate in the game. Although the defendant was told not to mention "assumption of the risk," the defendant was able to bring the defense into the case under the guise of contributory negligence.

Defendant, on the other hand, contends that plaintiff's voluntary decision to participate in the game with full knowledge of the possibility of injury should result in a proportionate allocation of fault to the plaintiff even though his decision to participate in the game was reasonable.[1] Defendant concedes that plaintiff's conduct in playing the game was not negligent.

Two related questions must be addressed: First, does RIAR remain as a separate defense to plaintiff's claim for damages under *Li*? If so, it was error to instruct the jury on contributory negligence. Second, if RIAR is no longer a separate defense in negligence actions, may RIAR still be considered by the jury as part of the contributory negligence defense?

Contributory negligence and assumption of risk are separate and distinct defenses. (*Grey* v. *Fibreboard Paper Products Co.* (1966) 65 Cal.2d 240, 245 [53 Cal.Rptr. 545, 418 P.2d 153]; *Vierra* v. *Fifth Avenue Rental Service* (1963) 60 Cal.2d 266, 271 [32 Cal.Rptr. 193, 383 P.2d 777]; *Fonseca* v. *County of Orange* (1972) 28 Cal.App.3d 361, 368 [104 Cal.Rptr. 566].) Assumption of

---

[1]Respondent argues on appeal, as it did in the court below, that "assumption of the risk is properly considered in assessing comparative fault." "[A] plaintiff may encounter the risk in a prudent manner and yet still be contributorily negligent. The jury should be able to take [plaintiff's knowledge that injury may occur in flag football] into consideration on the issue of reduction of damages without determining that playing [flag football] is unreasonable." Respondent bases these arguments on certain language in *Li* v. *Yellow Cab Co., supra,* 13 Cal.3d 804, which we will discuss below.

risk involves the negation of defendant's duty of care toward the plaintiff whereas contributory negligence is a defense to a breach of such a duty. Assumption of risk may be deemed to involve perfectly reasonable conduct on plaintiff's part whereas contributory negligence never does. Assumption of risk embraces the voluntary or deliberate incurring of known peril whereas contributory negligence frequently involves the inadvertent failure to notice danger. (*Fonseca* v. *County of Orange, supra,* 28 Cal.App.3d at pp. 368-369; 2 Harper & James, The Law of Torts (1956) § 22.2, p. 1201.)

 The courts have recognized an area of overlap between the two doctrines, so that identical facts may give risk to both defenses. (*Grey* v. *Fibreboard Paper Products Co., supra,* at pp. 245-246; *Fonseca* v. *County of Orange, supra,* at p. 369.) The overlap has been described by Prosser as follows: "[T]he plaintiff's conduct in encountering a known risk may be in itself unreasonable, because the danger is out of all proportion to the advantage which he is seeking to obtain. . . . If that is the case, his conduct is a form of contributory negligence, in which the negligence consists in making the wrong choice and voluntarily encountering a known unreasonable risk. In such cases, it is clear that the defenses of assumption of risk and contributory negligence overlap, and are as intersecting circles, with a considerable area in common, where neither excludes the possibility of the other." (Prosser, Torts (3d ed. 1964) § 68, pp. 440-441, cited in *Fonseca* v. *County of Orange, supra,* at p. 369.)

In *Li* v. *Yellow Cab Co., supra,* our Supreme Court abolished the overlap in negligence actions. Specifically, the court stated: "As for assumption of risk, we have recognized in this state that this defense overlaps that of contributory negligence to some extent and in fact is made up of at least two distinct defenses. 'To simplify greatly, it has been observed . . . that in one kind of situation, to wit, where a plaintiff *unreasonably* undertakes to encounter a specific known risk imposed by a defendant's negligence, plaintiff's conduct, although he may encounter that risk in a prudent manner, is in reality a form of contributory negligence . . . . Other kinds of situations within the doctrine of assumption of risk are those, for example, where plaintiff *is held to agree* to relieve defendant of an obligation of reasonable conduct toward him. *Such a situation would not involve contributory negligence, but rather a reduction of defendant's duty of care.*' [Citations.] We think it clear that the adoption of a system of comparative negligence should entail the merger of the defense of assumption of risk into the general scheme of assessment of liability in proportion to fault in those particular cases in which the form of assumption of risk involved is no more than a variant of contributory negligence. [Citation.]" (13 Cal.3d at p. 825, first italics in original; second and third italics added, see also *Paula* v. *Gagnon* (1978) 81 Cal.App.3d 680, 685 [146 Cal.Rptr. 702]; *Gonzalez* v. *Garcia, supra,* 75 Cal.App.3d 874, 878-881.)

While *Li* holds explicitly that "unreasonable" voluntary assumption of risk is merged into contributory negligence for comparative fault analysis, it does not make clear what part, if any, RIAR is to play in the comparative fault scheme. The ambiguity arises because of *Li*'s observation that there may be situations where the plaintiff is "held to agree" to relieve the defendant of an obligation of reasonable conduct toward him. This language may be interpreted to include both those cases in which the plaintiff expressly consents to relieve the defendant of any duty of care and cases in which the plaintiff has merely impliedly consented to face the risk of injury. (See Comment, *Assumption of the Risk in Alaska After the Adoption of Comparative Negligence* (1977) 6 U.C.L.A.-Alaska L.Rev. 244, 256.) By using the ambiguous phrase "held to agree" rather than "expressly agrees," the Supreme Court "has preserved the theoretical foundation for the maintenance of assumption of the risk as a separate and complete defense to an action for negligence. If consent, either express or implied, equals the removal of the defendant's duty of care, then the defendant is not negligent and damages cannot be apportioned." (*Id.,* at pp. 256-257.)

Professor Schwartz has interpreted *Li* to mean that a plaintiff who has reasonably assumed a risk may not recover damages because that form of assumption of risk negates defendant's duty of care to the plaintiff. (Schwartz, Comparative Negligence (special Cal. supp. 1975) p. 4, quoted in Comparative Negligence Practice (Cont.Ed.Bar 1978) pp. 16-17; see also Schwartz, *Li v. Yellow Cab Company: A Survey of California Practice Under Comparative Negligence* (1976) 7 Pacific L.J. 747, 756.) In other words, the plaintiff's conduct is not considered to be a form of fault, but rather the conduct alters (excuses) the defendant's duty. Schwartz' interpretation is consistent with the view expressed in Restatement Second of Torts section 496C, comment g, which states that plaintiff's assumption of risk may bar him from recovery for injuries caused by defendant's negligence towards plaintiff even though "plaintiff's conduct may be entirely reasonable under the circumstances."[2]

A more persuasive interpretation of *Li*'s language is that the "held to agree" language means "expressly" agrees. Professor Fleming recognizes that this meaning emerges by reading *Li* in light of *Fonseca* v. *County of Orange, supra,* 28 Cal.App.3d 361, 369. (*Li* at p. 825 cites to pp. 368-369 of *Fonseca.*) The *Fonseca* court declared: "[I]f the conduct be deemed unreasonable, it con-

---

[2] Professor James criticizes the Restatement view by attempting to show that most of the cases relied on to support its position do not do so. James points out that substantial judicial and scholarly support exists for the view that the doctrine of implied assumption of risk deserves no separate existence and is simply a confusing way of stating certain no-duty rules or, where there has been a breach of duty toward plaintiff, simply one kind of contributory negligence. (James, *Assumption of Risk: Unhappy Reincarnation* (1968) 78 Yale L.J. 185, 192-194; see also Note, *Contributory Negligence and Assumption of Risk—The Case for Their Merger* (1971) 56 Minn.L.Rev. 47, 53-58.)

stitutes both assumption of the risk and contributory negligence and, *as the latter, may be asserted.*" (Italics added, Fleming, *Forward: Comparative Negligence at Last—By Judicial Choice* (1976) 64 Cal.L.Rev. 239, 262-266.) The italicized language from *Fonseca* implies that if the plaintiff's conduct is reasonable it may *not* be asserted as a defense. Fleming explains that to "merge" assumption of risk into contributory negligence pragmatically will result in the abolition of implied assumption of the risk as a defense, "since almost all cases in practice involve *unreasonable* assumption of risk, [and] merger into comparative negligence would involve a less complicated way of transmitting the issue to juries and would secure the desirable result of apportioning damages [according to fault]." (*Id.,* at p. 266.) Fleming also notes that "it would be whimsical to treat one who has unreasonably assumed the risk more favorably (by allowing him to recover in part) than one who reasonably assumed the risk (and who might still be defeated entirely)." (*Id.,* at p. 262.) A similar statement emphasizing the inequities of such a result is contained in *Gonzalez* v. *Garcia, supra,* 75 Cal.App.3d 874, 879.

The Committee on Standard Jury Instructions, Civil, of the Superior Court of Los Angeles County (BAJI) appears to construe *Li*'s "held to agree" language to apply only to those situations in which the plaintiff expressly assumes the risk of injury "by specifically agreeing with the defendant that he, the plaintiff, would not hold the defendant responsible if an injury should be caused by the defendant's negligence, . . ." (BAJI No. 4.30 (6th ed. 1977) p. 124.) Such an agreement apparently would be enforceable unless it is contrary to public policy. (Cf. *Tunkl* v. *Regents of University of California* (1963) 60 Cal.2d 92 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693].)[3]

No California case since *Li* v. *Yellow Cab Co.* has squarely decided the question whether RIAR was abolished by the adoption of the comparative negligence scheme. When we say abolished, we mean the absolute foreclosure of any right by a defendant to contend that the plaintiff's RIAR can be asserted in a personal injury or property damage action either as (1) a total defense arising from an implied waiver by plaintiff of any duty of care by the defendant toward the plaintiff or (2) a partial defense based on a lack of due care by the plaintiff for his own safety, i.e., contributory negligence.

We interpret *Li* to mean that the separate defense of implied assumption of the risk is abolished under the comparative negligence law. It is only when the

---

[3]In the present case, if the plaintiff had signed a written waiver expressly agreeing to relieve the defendant Housing Authority of any duty of care toward any player including the plaintiff who elects to participate in the football games, it would probably be a valid waiver and would constitute a total defense to the plaintiff's claims for injury insofar as the defendant Housing Authority is concerned. Such a waiver, however, would not provide a defense to the other players with respect to any negligence on their part which proximately caused injury to the plaintiff.

plaintiff expressly agrees to assume the risk that the defendant is relieved of a duty of care toward the plaintiff, thus barring any recovery. In our view, this is the only rational meaning to be given to the principles articulated in *Li*. The Supreme Court recognized that implied assumption of risk if unreasonable could be fairly handled under the comparative negligence concept, i.e., the plaintiff's recovery would be reduced to the extent his own lack of reasonable care contributed to his injury. If the plaintiff's conduct was entirely reasonable under all of the circumstances, we find no basis in reason or equity for barring his recovery. Elimination of RIAR as a separate defense avoids punishing reasonable conduct. (*Gonzalez* v. *Garcia, supra,* 75 Cal.App.3d at p. 879; Fleming, *op. cit. supra,* 64 Cal.L.Rev. at p. 266; James, *op. cit. supra,* 78 Yale L.J. at pp. 192-196; Note, *Contributory Negligence and Assumption of Risk—The Case for Their Merger, supra,* 56 Minn.L.Rev. at p. 57.)

Persuasive out-of-state authority supports our holding. In *Blackburn* v. *Dorta* (Fla. 1977) 348 So.2d 287, the Florida Supreme Court completely abolished implied assumption of the risk as a defense under its comparative negligence law. The court first held that no useful purpose is served by retaining terminology which expresses the thought involved in primary assumption of the risk, i.e., that the defendant owed no duty to the plaintiff or did not breach the duty owed which is simply another way of saying the defendant was not negligent. Under Florida jury instructions (as in California), the jury is directed first to determine whether the defendant is negligent. "To sprinkle the term assumption of risk into the equation can only lead to confusion of a jury." (*Id.,* at p. 291.)

The court then held there is no need to give credence to the principle of implied assumption of the risk "which is the affirmative defense variety that has been such a thorn in the judicial side." (*Ibid.*) This affirmative defense can be subdivided into the type of conduct that is reasonable but nonetheless bars recovery (sometimes called pure or strict assumption of risk), and the type of conduct which is unreasonable and bars recovery (sometimes referred to as qualified assumption of the risk). Application of pure or strict assumption of risk is exemplified by the hypothetical case in which a landlord has negligently permitted his tenant's premises to become highly flammable and a fire ensues. The tenant returns from work to find the premises a blazing inferno with his infant child trapped within. He rushes in to retrieve the child and is injured. Under the pure doctrine of assumption of risk, the tenant is barred from recovery because it can be said he voluntarily exposed himself to a known risk. He is precluded from recovery notwithstanding the fact that his conduct can be said to be entirely reasonable under the circumstances. (*Ibid.,* citing Rest.2d Torts (1965) § 496C, coms. d-g.) The court concluded, "There is little to commend this doctrine of implied-pure or strict assumption of risk, and our research discloses no Florida case in which it has been applied. Certainly [in light

of our comparative negligence law], there is no reason supported by law or justice in this state to give credence to such a principle of law." (*Ibid.*)

The Florida court next analyzed the principle of implied-qualified assumption of the risk which can be demonstrated in the hypothetical case recited above with the minor alteration that the tenant rushes into the blazing premises to retrieve his favorite hat. Such conduct on the tenant's part clearly would be unreasonable; hence, his conduct can readily be characterized as contributory negligence. Asking rhetorically whether there can be any sound rationale for retaining this type of assumption of risk as a separate affirmative defense to negligent conduct which bars recovery altogether, the court answered in the negative. "We are persuaded that there is no historical significance to the doctrine of implied-secondary assumption of risk." (*Id.*, at p. 292.)

The court concluded: "We find no discernible basis analytically or historically to maintain a distinction between the affirmative defense of contributory negligence and assumption of risk. The latter appears to be a viable, rational doctrine only in the sense described herein as implied-qualified assumption of risk which connotes unreasonable conduct on the part of the plaintiff. This result comports with the definition of contributory negligence appearing in Restatement (Second) of Torts, § 466 (1965)." (*Ibid.*)

In *Farley* v. *M M Cattle Company* (Tex. 1975) 529 S.W.2d 751, the Texas Supreme Court annulled the implied assumption of risk defense. The case involved a suit for damages for personal injuries sustained by a 15-year-old cowboy where there was evidence that his employer had known of the dangerous propensities of Crowbar, the horse which plaintiff had been directed to ride, and the ranch foreman had failed to supervise the activity in which the cowboy was engaged. In holding that "henceforth" in the trial of all negligence actions in Texas the doctrine of implied assumption of the risk would no longer be treated as an issue, the court stated, "Rather, the reasonableness of an actor's conduct in confronting a risk will be determined under principles of contributory negligence." (*Id.*, at p. 758.)

See also *McConville* v. *State Farm Mutual Automobile Ins. Co.* (1962) 15 Wis.2d 374 [113 N.W.2d 14], *Springrose* v. *Willmore* (1971) 292 Minn. 23 [192 N.W.2d 826] and *Wilson* v. *Gordon* (Me. 1976) 354 A.2d 398 where the Supreme Courts of Wisconsin, Minnesota and Maine abolished implied assumption of the risk as a separate defense under the comparative negligence law. As to other jurisdictions which have rejected implied assumption of risk as a separate defense, see Schwartz, Comparative Negligence, *supra,* sections 9.1-9.5, pages 153-175, (1981 cumulative supp.) pages 71-83; but see *Kennedy* v. *Providence Hockey Club, Inc.* (1977) 119 R.I. 70 [376 A.2d 329] for contrary view that contributory defense and assumption of risk do not merge.

We turn now to the second question whether RIAR plays any part in the comparative fault equation by characterizing it as a form of contributory negligence which can reduce proportionately the plaintiff's recovery for the defendant's negligence. This is not a vacuous question since a great deal of confusion has existed on this point, as evidenced by respondent's argument in the present case. Respondent purports to quote from *Li* v. *Yellow Cab Co., supra,* 13 Cal.3d at page 824: " '[I]n one kind of situation, to wit, where a plaintiff *unreasonably* undertakes to encounter a specific known risk imposed by a defendant's negligence, plaintiff's conduct, *although he may encounter that risk in a prudent manner,* is in reality a form of contributory negligence . . . .' " (Quoting *Grey* v. *Fibreboard Paper Products Co., supra,* 65 Cal.2d at pp. 245-246; first italics original, second italics added by respondent.) Unfortunately, respondent's emphasis in the above quotation does not conform to the Supreme Court's italicized language in *Grey,* which was quoted in *Li.* The court emphasized only the word "unreasonably," and not the phrase "although he may encounter that risk in a prudent manner."

We believe the Supreme Court was speaking of the plaintiff's conduct in actually participating in the potentially dangerous activity and not to his decision to confront the risk when it said he could "encounter" that risk in a prudent manner. The court was simply declaring that only an unreasonable assumption of the risk would constitute contributory negligence.

Nevertheless, defendant is not alone in contending that RIAR may be used by the jury to apportion some degree of fault to the plaintiff. Paul Peyrat of Continuing Education of the Bar in his excellent article entitled *Comparative Fault—Six Years After Li* (3 CJER J. (1981) pp. 123, 126) cites *Gonzalez* v. *Garcia, supra,* 75 Cal.App.3d at page 879 as indicating that assumption of risk should be treated as a form of contributory fault that may reduce recovery when a plaintiff considers his actions and, given the available alternatives, "reasonably" encounters the risk. To determine the validity of Peyrat's assertion, we must examine *Gonzalez.*

In *Gonzalez,* the defendant appealed because the trial court had refused to instruct the jury on the defense of assumption of risk in a personal injury action arising out of an automobile accident. The plaintiff passenger had fallen asleep before the accident although he knew that the driver was intoxicated. The Court of Appeal affirmed holding that plaintiff's conduct of choosing to ride with an intoxicated driver amounted to the variant of contributory negligence that exists when a plaintiff unreasonably undertakes to encounter a specific known risk created by a defendant's negligence (there were other reasonable transportation alternatives available to the plaintiff). "To that extent, the doctrines [of contributory negligence and assumption of risk] merged under *Li* . . . into the doctrine of comparative negligence." (*Id.,* at pp. 875-879, 881.)

*Gonzalez* first discussed the various approaches used by other comparative negligence jurisdictions to handle the defense of assumption of risk: (1) completely abolishing it as a defense, as in the federal Employers' Liability Act; (2) maintaining it as a complete and separate defense; (3) merging it to some extent with contributory negligence. The court further explained, "In those states which have merged the defenses, there has frequently been a complete merger of implied assumption of risk and contributory negligence, with express assumption of risk remaining as a separate defense." (75 Cal.App.3d at p. 879, citing *McConville* v. *State Farm Mutual Automobile Ins. Co., supra,* 113 N.W.2d 14.) *Gonzalez* recited the now familiar argument that it would be inequitable to allow the plaintiff to recover a portion of his damages if his actions in encountering the danger were unreasonable but to bar plaintiff completely if his actions were carefully considered and reasonable, based upon the available alternatives. The *Gonzalez* court then declared, "We find this last approach to be the better view and to be the approach most in keeping with the Supreme Court's opinion in *Li.*" (75 Cal.App.3d at p. 879.)

With all due respect to Mr. Peyrat, we believe he has misconstrued what was intended by the *Gonzalez* court when he interprets the case as holding that RIAR may be treated as a form of contributory fault. The sole issue before the *Gonzalez* court was whether the trial court had erred in refusing to instruct the jury on the separate defense of assumption of risk. (*Id.,* at p. 875.) The trial court did not err because implied assumption of risk was no longer a complete defense under *Li.* The *Gonzalez* opinion did not address RIAR. Indeed, to have commented upon RIAR would have been pure dicta.

Any contention that the *Gonzalez* court's citation to *McConville* v. *State Farm Mutual Automobile Ins. Co., supra,* as reflecting a jurisdiction which has *completely merged* implied assumption of risk into contributory negligence indicates an intent to preserve RIAR as a partial defense under the comparative negligence scheme, is answered by referring to the Wisconsin opinion itself. After holding that an automobile guest's unreasonable exposure of himself to a particular hazard constitutes negligence and is therefore subject to the comparative negligence statute, the Wisconsin court states: "There may be circumstances where a guest's willingness to proceed in the face of a known hazard for which the host is responsible is not unreasonable. In a particular situation the utility of riding with the host and the inadequacy of any alternative course may both be so obvious that the guest's acquiescence might constitute assumption of risk as heretofore existing, but not a lack of ordinary care. *In such circumstances the guest's acquiescence will constitute no defense under the rule we are now adopting.* . . . Under the new rule, the trier of the fact may determine that a guest failed to exercise ordinary care in riding with a particular host with knowledge of the host's deficiencies in driving, but may also evaluate such failure in light of all the circumstances and then compare it with the

failures of the host which contribute to the injury." (113 N.W.2d at p. 17, italics added.)

Thus, *McConville* in no way stands for the proposition that RIAR remains a partial defense under the comparative negligence law; to the contrary, we construe *McConville* as foreclosing consideration of RIAR by the jury.

In *Li* v. *Yellow Cab Co.,* the Supreme Court adopted a "pure" system of comparative negligence whereby the plaintiff's damages are to be apportioned according to *fault* in all cases rather than precluding recovery if the plaintiff's negligence is equal to or greater than the defendant's. (13 Cal.3d at pp. 827-829; see Schwartz, *op. cit. supra,* 7 Pacific L.J. at pp. 748-749.) Contributory negligence is defined as "conduct . . . which falls below the standard to which [the plaintiff] should conform for his own protection, and which is a legally contributing cause co-operating with the negligence of the defendant in bringing about the plaintiff's harm." (Rest.2d Torts, § 463; see also BAJI Nos. 3.10, 3.51 (6th ed. 1977).) If we assume a plaintiff has acted reasonably in regard to his own safety in deciding to confront the risk, then his act of confronting the risk may not be considered as "fault" justifying an apportionment of damages. A plaintiff's fault under the comparative negligence scheme should be negligence and nothing else. Indeed, to hold otherwise would be to permit the defendant to resurrect the defense of implied assumption of risk which, as we have explained, was abolished by *Li.*

The anomaly of permitting RIAR to reduce a plaintiff's recovery for injuries suffered as a result of a defendant's negligence is further demonstrated when we consider the historic premise of the implied assumption of risk doctrine—that the plaintiff's exposure to the danger be *voluntary.* The defense does not apply when the risk is assumed out of necessity. Unless the plaintiff has reasonable alternatives available to him, he cannot be said to have voluntarily assumed the risk. (Rest.2d Torts, § 496E, com. c, p. 577; see Note, *Contributory Negligence and Assumption of Risk—The Case for Their Merger, supra,* 56 Minn.L.Rev. at p. 55.)[4]

We have come to the end of our journey: RIAR is not a defense under the comparative negligence law of California. It is only when the jury finds that the

---

[4]The California cases have been quite flexible in determining what is a necessity to render the exposure to the danger involuntary. The test generally has been whether the risk assumed was greater than what was reasonably necessary to meet the ordinary requirements of business or pleasure. (See 46 Cal.Jur.3d, Negligence, § 142, pp. 351-352.) For example, "The fact that one voluntarily assumes a certain degree of risk is not conclusive of negligence. In these days of rapid transit and congested traffic, every [person] who crosses a busy street, or drives an automobile, takes chances, and serious ones. The question is, Are they greater than reasonably necessary to meet the ordinary requirements of business, or even pleasure?" (*Bonding etc. Co.* v. *Railway Co.* (1919) 42 Cal.App. 573, 577 [184 P. 29].)

plaintiff's implied assumption of the risk is unreasonable that the plaintiff's recovery will be reduced because of his contributory negligence.

 In the present case, the plaintiff is a young man who decided to play in a flag football game, a healthy, socially desirable organized recreational activity. His decision to play should not be deemed negligence on his part, absent proof that he lacked the skill or physical capacity to play the game or suffered from some physical or emotional impairment which would have made his decision to play in the game unreasonable. By "unreasonable," we mean his decision falls below the standard of care which a person of ordinary prudence would exercise to avoid injury to himself or herself under the circumstances. (Rest.2d Torts, § 463; BAJI Nos. 3.10, 3.51 (6th ed. 1977).) The "person" used as the standard to evaluate the plaintiff's decision to participate in the game is not the extraordinarily cautious individual nor the exceptionally skillful one but a person of reasonable and ordinary prudence. (BAJI No. 3.10 (6th ed. 1977); see also BAJI No. 3.35 (6th ed. 1977)— standard of conduct for a minor.)

The fact that the plaintiff had a reasonable alternative available to him by not playing in the game does not render his decision to play unreasonable. Participation in a flag football game should be distinguished from participation in a socially undesirable activity such as riding with an intoxicated driver. (*Gonzalez* v. *Garcia, supra,* 75 Cal.App.3d 874; *Paula* v. *Gagnon, supra,* 81 Cal.App.3d 680, 685.) Flag football is usually beneficial to all the participants and to society as a whole. Such activity should be encouraged.

Nor does the fact that the plaintiff is aware of the risk of injury from a violation of the rules of the game in itself render his decision to participate unreasonable. Anyone who participates in an organized, socially approved recreational activity is fully aware of the possibility of injury due to a violation of the rules of play, yet the decision to play may be perfectly reasonable.

We reject the argument that our holding will produce any undesirable results in negligence actions arising from organized recreational activities because it removes from the jury the right to allocate to the plaintiff some degree of fault for his injuries because of his election to participate in the activity, i.e., if he had stayed home he would not have been injured. To the contrary, our holding will enable the jury to focus its attention on the real issues in the case: the negligence of the parties who were directly involved in plaintiff's injury and whether such negligence was a proximate cause of the injury.[5] This is the essence of the principles articulated in *Li* v. *Yellow Cab Co., supra,* 13 Cal.3d 804.

---

[5] A player is not negligent simply because he violates a playing rule; even an inference of negligence does not automatically arise (compare Evid. Code, § 669 pertaining to the violation of a statute, ordinance or regulation of a public entity). Many rules are violated under the heat of

■■■ In the present case, the defendant concedes that the plaintiff was not negligent in his conduct during the game. Since there is no evidence that plaintiff's decision to play in the game was unreasonable, it was error to instruct on contributory negligence. The trial court was correct in refusing to instruct on assumption of risk and, as is self-evident from this opinion, in precluding respondent from mentioning the term or the concept of assumption of risk to the jury.

Plaintiff's contention of inadequate damages need not be discussed.

The judgment is reversed.

Andreen, J., and Hamlin, J., concurred.

---

competition as evidenced by the numerous penalties called in organized football, basketball and baseball games. The defendant's conduct like the plaintiff's conduct is to be adjudged under the particular facts by the standard of an ordinary person.